THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES LEE GUNNER, Defendant-Appellant.

Fifth District   No. 78-176

Opinion filed June 19, 1979.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

After a jury trial in the Circuit Court of Madison County, defendant, James Lee Gunner, was convicted of rape, armed robbery, burglary and deviate sexual assault. He was subsequently sentenced to concurrent terms of imprisonment of 30 to 60 years for rape, 15 to 30 years for armed robbery, 5 to 15 years for burglary and 40 to 60 years for deviate sexual assault. On appeal, defendant contends (1) that he was denied a fair trial because of several allegedly prejudicial remarks made by the prosecutor during his closing argument, (2) that the sentences imposed were excessive, and (3) that the trial court's failure to inform him of the exact sentences he would receive under the old and new sentencing acts improperly deprived him of an opportunity to make a knowing and intelligent election between the acts.

At trial, the victim testified that the incident occurred on the evening of September 28, 1977, in her home in Collinsville, Madison County. She related that at approximately 10 p.m. that evening while she was watching television in her basement and while her six-year-old son was asleep in his bedroom on the second floor, she heard a noise outside the home prompting her to walk upstairs to the kitchen to investigate. The victim stated that she asked several times in a loud voice who was there but received no reply. Finally, she shouted that she was going to telephone the police and began dialing their number whereupon the kitchen door was kicked open by two men wearing masks who entered the house. One of the men, whom she identified in court as defendant, was brandishing a gun and immediately took off his mask thus enabling her to observe his face and physical features for what she estimated to be approximately 25 minutes.

According to the victim, when she told the men that her husband was not at home, defendant told the other man, whose name was McGee, to check upstairs on her son while defendant took her to the basement to get her stereo. However, as she began to walk down the stairs to the basement McGee returned, ripped her nightgown and began striking her across the face with his hand. McGee also told her that if she did not cooperate with them, her son would be hurt and reminded her that they had a gun pointed at her.

The victim further testified that defendant then pushed her to the floor and forced her to submit to several acts of sexual and anal intercourse. She also stated that McGee forced her to submit to an act of fellatio with him in defendant's presence. Both men then began gathering up her stereo equipment and also took $150 from her. Before leaving the house, both men tied the victim's hands to her ankles, forced her to crouch down on the floor and placed a heavy chair over her. The victim

related that she managed to free herself and called the police shortly after defendant and McGee left.

Officer John Swindle of the Collinsville Police Department testified that he went to the victim's home on the night in question in response to her report of the incident. Swindle identified several photographs which had been taken of the interior of the home that evening and certain exhibits found inside the house.

Betty Nooney, a registered nurse at Belleville Memorial Hospital, testified that the victim arrived at the hospital by ambulance at approximately 11:30 p.m. on September 28, 1977. She recalled that the victim stated that two men had broken into her home that evening and raped her. Nooney related that part of the victim's face was discolored and slightly swollen and that she had circumferential abrasions around her wrists and ankles. James Thulin, a medical technician at Belleville Memorial Hospital, testified that traces of sperm were found in the victim's vagina; however, there was no indication of the presence of sperm in her rectum.

Detective Richard W. Stone of the East St. Louis Police Department testified that he interviewed defendant at his home on October 27, 1977, at which time defendant partially admitted his involvement in the offense. In his statement to Stone, defendant related that McGee and he had broken into the victim's home and stolen her stereo in the manner in which she had previously described to the police. However, defendant stated that the entire incident only took a few minutes and he denied that the victim had been raped or forced to submit to acts of deviate sexual assault. According to Stone, defendant voluntarily made and signed the statement implicating him in the offense.

Terrence Delaney, special agent with the Illinois Department of Law Enforcement, testified that he conducted a photographic display for the victim on October 6, 1977, at which time she tentatively identified a photograph of defendant as being that of one of her assailants. Delaney also related that he conducted a lineup on October 27, 1977, from which the victim identified defendant.

Testifying in his own behalf, defendant denied any involvement in the incident on the night in question and claimed that his prior statement to the police had been given under duress. Defendant stated that he had been threatened by the police with physical abuse if he did not give them a signed statement admitting his participation in the offense. According to defendant, he was at home all evening on September 28, 1977, because he had a traffic accident earlier that day which damaged the radiator in his automobile. He related that he did not know the victim and denied ever having been in her home. He further testified that he had never threatened

the victim and that he had never engaged in sexual intercourse nor deviate sexual relations with her.

Following closing arguments and instructions, the jury found the defendant guilty of armed robbery, burglary, rape and deviate sexual assault.

Defendant's sentencing hearing was held on April 6, 1978, at which time the State presented no evidence in aggravation other than the facts presented during the trial. At the hearing, the trial court advised defendant of his right to elect to be sentenced under either the law as it existed at the time of his offenses or the law in effect at the time of sentencing (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1008—2—4(b)). Defendant was presented with the range of penalties available for his convictions under both acts and he was advised of the mandatory parole term as well as the extended term provisions of the new act. Defendant indicated that he wished to be sentenced under the old act and he was thereupon sentenced to concurrent terms of imprisonment of 30 to 60 years for rape, 15 to 30 years for armed robbery, 5 to 15 years for burglary and 40 to 60 years for deviate sexual assault.

■■■ Defendant first contends that he was denied a fair trial because of several allegedly improper and prejudicial remarks by the prosecutor during his closing argument to the jury. Defendant specifically cites eight separate instances of improper argument or conduct which he asserts requires reversal of his convictions by this court. However, with one exception, no defense objections were made at trial to the remarks and comments now complained of. It is well established that irregularities in the prosecutor's closing argument not objected to in the trial court may be deemed waived (*People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227); and any error in closing argument may be waived by failure to object thereto (*People v. Moore* (1973), 55 Ill. 2d 570, 304 N.E.2d 622; *People v. Edwards* (1973), 55 Ill. 2d 25, 302 N.E.2d 306). The one allegedly improper remark which defendant did object to was promptly sustained by the trial court; however, the propriety of that comment, if it were error, was not preserved for review because of defendant's failure to specify it in his written post-trial motion, in which he merely charged that "the prosecutor's closing argument to the jury was inflammatory and prejudicial." Generally, the failure by defendant to raise an issue in the written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Furthermore, having carefully examined the entire transcript of the prosecutor's closing argument, we are of the opinion that the challenged remarks, even when viewed cumulatively, were not so improper as to have denied defendant a fair

trial. We base this conclusion on the fact that several of these remarks can reasonably be construed to have been comments by the prosecutor upon relevant evidence in the record or legitimate inferences deducible therefrom and, therefore, not improper *(People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537; *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840). In addition, we do not believe that any of the remarks now complained of, regardless of their propriety, could have affected the jury's determination in view of the testimony and evidence presented at trial, the sufficiency of which defendant does not challenge on appeal. Without substantial prejudice to the accused, improper remarks of counsel cannot constitute reversible error *(People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881). We are of the opinion that the evidence of defendant's guilt was overwhelming and conclude that any remarks made by the prosecutor in closing argument did not result in substantial prejudice to defendant.

Defendant next contends that the sentences imposed were excessive and should be reduced. Defendant does not charge that in imposing sentence the trial judge failed to comply with the sentencing act or that he considered improper factors; instead, he asserts that the lengths of the sentences imposed greatly diminishes his potential for rehabilitation. In this regard, defendant points out he was only 24 years of age at the time of the sentencing, had a steady employment record and only one prior conviction for disorderly conduct. The State responds that harsh sentences were justified in view of the violent nature of the crimes committed, defendant's terrorism of the victim and her son and the danger he poses to the public safety.

■■ We recognize that sentences imposed within the statutory limits should only be interfered with by reviewing courts in those instances where the sentence constitutes a great departure from the spirit and purpose of the law *(People v. Cunitz* (1977), 45 Ill. App. 3d 165, 359 N.E.2d 1070; *People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673). Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)(4)) gives us the power to reduce the punishment of the trial court where appropriate; however, this authority must be applied with considerable caution and circumspection since the trial judge is in a better position to make a sound determination concerning the sentence to be imposed *(People v. Caldwell* (1968), 39 Ill. 2d 346, 236 N.E.2d 706).

■■ As stated in *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, it is not the function of courts of review to serve as a sentencing court and they should not substitute their judgment for that of the trial court, the imposition of sentence being a matter of judicial discretion. Based on the evidence presented in the instant case, we cannot say that the trial court

abused its discretion. Defendant was found guilty of the commission of four felonies, three of them Class I felonies. In addition to the repeated incidents of rape and deviate sexual assault in the instant case, the complaining witness was also struck in the right eye, resulting in a bruise and swelling, and suffered circumferential abrasions to both wrists and ankles. Accordingly, we shall not disturb the sentences imposed.

Defendant finally contends that the trial court erred in failing to set the exact sentences which he would receive under the new and old acts prior to his election to be sentenced under the former law. Defendant asserts that this omission, together with the trial court's failure to inform him of the substantial differences in the old and new good time provisions, deprived him of an opportunity to make a knowing and intelligent election. The State replies that because this right to elect was statutory and not constitutional, the trial court was not required to give any admonitions other than notice of the right to elect, and that the burden of admonitions fell on defense counsel.

■■ Section 8—2—4(b)( Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1008—2—4(b)) gives a defendant the right to elect to be sentenced under either the law as it existed at the time of his offense or the law in effect at the time of sentencing. Unlike the mandatory admonitions provided for in Supreme Court Rules 401 and 402 (Ill. Rev. Stat. 1977, ch. 110A, pars. 401 and 402), neither statute nor any Supreme Court Rule requires that specific admonitions be given or that the election be knowing and intelligent. Neither must a defendant be informed by the trial court in advance what the sentence will be under each act, nor what will or might be his best or most advantageous choice (*People v. Dozier* (1979), 67 Ill. App. 3d 611, 385 N.E.2d 155; *People v. Warfel* (1979), 67 Ill. App. 3d 620, 385 N.E.2d 175). We further note that defendant does not complain that he was inadequately counseled by his attorney regarding his decision to be sentenced under the old act, nor does he charge that he would have elected differently had the court more thoroughly informed him of the differences between the acts. In fact, the record reflects that the trial court noted that defense counsel had advised defendant of the options he had under the old and new sentencing laws. We conclude, therefore, that the trial court did not err in imposing defendant's sentences.

Therefore, we affirm the judgment of the Circuit Court of Madison County.

Affirmed.

KARNS and KUNCE, JJ., concur.