THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JUDY MEEKS, Defendant-Appellant.

Fifth District    No. 78-313

Opinion filed August 7, 1979.

JONES, J., dissenting.

John P. Coady, Public Defender, of Effingham, for appellant.

Scott Wilzbach, State's Attorney, of Salem (Linda Watkins, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant Judy Meeks appeals from a judgment of the circuit court of Marion County entered on a jury verdict finding her guilty of three counts of unlawful delivery of a controlled substance. She elected to be sentenced under the provisions of the new Illinois sentencing act, which has a legislatively expressed preference for probation as a sentencing alternative in appropriate cases (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—6—1). Following a sentencing hearing, the court imposed three concurrent sentences of two years to the Illinois Department of Corrections. Probation was denied. Defendant appeals from the judgment and the sentence, alleging certain errors at both the trial and the sentencing hearing.

The defendant's assignments of error insofar as the trial is concerned relate to a statement by the judge in front of the prospective jurors that a large majority of cases are settled before trial, the State's failure to disprove an affirmative defense which it allegedly put in issue, the State's failure to properly establish a chain of custody for admission of the controlled substances, the State's alleged substantive use of impeaching evidence, and the general insufficiency of the evidence to sustain a verdict of guilty beyond a reasonable doubt.

The defendant's assignments of error insofar as the sentencing hearing is concerned have to do with the court's alleged failure to read and consider the presentence report, the court's consideration of offenses neither charged nor proven against the defendant, the court's inference and consideration of perjury by the defendant as a consequence of the jury's rejection of her testimony, and the denial of probation in view of the defendant's strong potential for rehabilitation in contravention of the statutory policy.

Those errors alleged to have occurred at trial are insufficient to warrant a reversal of the conviction, but a thorough review of the record and the requirements of the new sentencing act, however, indicate that the sentencing hearing did not comport with the statutory policy and therefore requires a remand for a new sentencing hearing.

The facts of the case grow out of three separate deliveries of a substance known as phencyclidine, commonly referred to as "PCP," to an undercover agent of the Illinois Bureau of Investigation. The undercover police officer, George Murray, testified that on three separate occasions in 1977 he and a confidential informant went to the defendant's residence in

Centralia, Illinois, and purchased four "dime-bags," or $40 worth, of PCP from the defendant. Murray was the State's key witness and the only eyewitness to the transactions at the trial. The informant was not called as a witness. Several other officers of the Illinois Bureau of Investigation conducted surveillance on Murray while he made the purchases and rendezvoused with him afterwards for purposes of processing the evidence, but were not witnesses to the actual goings-on inside the residence.

The substances were delivered for analysis and were identified at trial as containing PCP by two persons employed by the Illinois Bureau of Scientific Services who described their occupations as "criminalist." Both the "criminalists" and the police officers testified as to the chain of custody of the substances.

Defendant presented an alibi defense, alleging that she was in Chicago seeking employment at all times in question. Four defense witnesses testified as to her whereabouts during this time, concluding that it would not have been possible for defendant to be in Centralia when the crimes were committed. The State's case-in-chief included testimony from a neighbor of the defendant who happened to be a Centralia police officer that he observed the defendant at home on the dates in question. In rebuttal, the State offered an employment application from the Centralia Illinois Power Company allegedly signed by the defendant during the time she claimed to be in Chicago. The trial court restricted use of this exhibit to impeachment evidence and refused to let it go to the jury.

The trial court ordered a presentence investigation as required by the Unified Code of Corrections since the offense involved was a felony. (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—3—1.) At the sentencing hearing, the defendant elected to be sentenced under the amended version of the Unified Code of Corrections which makes probation a preferred sentencing choice. The offense involved is a Class 3 felony. (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(d).) The punishment provided under the old sentencing scheme was an indeterminate sentence ranging from one to 10 years and a possible fine of up to $15,000, plus a mandatory parole of three years. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1.) The punishment under the amended sentencing law is a determinate sentence of not less than two years nor more than five years and a possible fine of up to $15,000, with a mandatory supervised release term of one year. (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—8—1(a)(6) and (d)(3).) The defendant had the choice of a lower minimum sentence under the old statute should imprisonment be imposed, although the old statute reflected a policy now discarded by the legislature that imprisonment could work as a rehabilitation.

■■ We will first consider the alleged trial errors. The trial judge's

comments to the panel of jurors that "many cases are settled at the last minute" and "it's your availability as jurors that often times causes those cases to be settled" were not prejudicial to the defendant by inferring that she had engaged in plea negotiations, which in turn infers that she is guilty. This was neither a special nor a general reference to real or supposed plea negotiations on the part of the defendant, but rather a preliminary attempt by the judge to explain our system of jury selection and responsibility and to bring to the panel's attention their usefulness in the administration of justice.

■■■ The defendant next contends that the State put into issue the exemptions of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1506) by asking the undercover police officer who made the purchases whether he had any knowledge that defendant was a doctor, pharmacist, or otherwise licensed to dispense drugs and whether he had given her a prescription. Since the Illinois Controlled Substances Act puts the burden on the defendant of proving any exemptions, it is tantamount to an affirmative defense. (*People v. Biers* (1976), 41 Ill. App. 3d 576, 353 N.E.2d 389.) The State is not required to allege and prove the non-existence of these exemptions when they are not raised. However, once they appear to be reasonably applicable, the State must disprove them beyond a reasonable doubt. (*People v. Biers* (1976), 41 Ill. App. 3d 576, 582-83.) The undercover agent's statement that he had no knowledge of defendant falling within one of the exemptions would not be proof beyond a reasonable doubt, even if it was unimpeached and un-contradicted as the State has argued. But that is not the issue. The applicability of the exemptions was never put in issue, either on direct examination by the State as outlined above or on cross-examination by the defendant. The State does not put an affirmative defense into issue by attempting to show that a defendant had no legal justification for her actions. Furthermore, the purpose behind affirmative defenses and exemption provisions of relieving the State of the wasteful task of proving certain negative propositions would have been defeated here if the State had been required to bring forth personnel from the Department of Licensing and Registration to testify that defendant was not licensed to dispense drugs in the State of Illinois.

Defendant next contends that there was an insufficient foundation laid for admission of the controlled substances into evidence due to irregularities in the chain of custody. This is based upon an alleged possibility of accidental substitution while at the crime laboratory. Defendant contends that even though the evidence was kept in a locked vault before and after testing, there was no testimony as to what other individuals might have had access to the vault prior to testing. There is no missing link in the chain of possession of these substances. They have

been accounted for at all relevant times up to trial. There is no suggestion in the record of any tampering or altering of the substances and defendant did not inquire into these matters on cross-examination. Therefore, the admission of them into evidence was proper.

Defendant's contention that the State's evidence was insufficient to sustain a verdict of guilty beyond a reasonable doubt is based upon two propositions, both of which are invalid. Defendant first contends that the State's evidence standing alone is unsatisfactory because of the failure to call other occurrence witnesses. Defendant then contends that her overwhelming evidence of alibi renders the State's evidence insufficient by comparison. Both of these, defendant argues, cast sufficient doubt upon her identification as the individual involved in the deliveries so as to warrant reversal. The case relied upon by the defendant in support of a reversal because of conflicts between the strength of identification testimony and alibi evidence is not on point. In *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232, a rape conviction was reversed because the identification of the defendant was uncertain in view of the nature of the crime and the circumstantial evidence. In the present case, the State's key witness had three separate opportunities to view the defendant, there is no indication that he was under any kind of stress during these observations which could impair his perception, and the defendant failed to impeach him during cross-examination on the circumstances surrounding the identification. The testimony of a single witness, if positive and credible, is sufficient to sustain a conviction, even though contradicted by the accused. (*People v. Wilkins* (1976), 36 Ill. App. 3d 761, 344 N.E.2d 724; *People v. Glaze* (1977), 48 Ill. App. 3d 523, 362 N.E.2d 1287.) Finally, defendant's alibi evidence was substantially impeached and the jury was well within its province to disbelieve it when deciding the question of identification.

Defendant's final allegation of error at the trial concerns the State's use of evidence outside its limited purpose. During cross-examination of the defendant, the State attempted to impeach her credibility by confronting her with an employment application allegedly completed by her in Centralia during the period in which she testified that she was in Chicago. The court permitted this evidence to be used solely for the purpose of impeachment and not as substantive proof of defendant's presence in Centralia, and the jury was so instructed. Defendant contends that the State's comments during closing argument in reference to the application were for the purpose of proving defendant's presence in Centralia, rather than to show inconsistencies in her testimony. In other words, defendant contends that the State used the application to attack her alibi rather than to attack her credibility. Statements by

the prosecutor in urging the jury to consider the employment application included the following comments:

"All right, she said, I was up in Chicago the entire month of May and June. I was never in Centralia. * * * This is the same Judy Meeks who said she was in Chicago * * * yet somehow Illinois Power Company has a job application filled out that month of May when she was not even supposed to be in Centralia. Judy Meeks has presented an alibi defense. It's not me because I wasn't there."

While it is true that instructions to a jury do not automatically erase improper argument from the jurors' minds, the error must be of such magnitude that in all fairness the conviction cannot stand. In this case, the substantive as well as the impeachment implications of the evidence were so intertwined that argument on one would inevitably lead to inferences regarding the other. The mere fact that impeachment evidence can have the coincidental effect of buttressing the State's case-in-chief is not in itself cause for reversal. Although the legal distinction between the possible inferences to be drawn from the employment application is clear (*i.e.*, "I wasn't where I said I was" versus "I was in Centralia rather than Chicago"), they are practically indistinguishable to a jury. However, looking at the record as a whole, the jury had sufficient direct evidence of defendant's presence in Centralia to make their determination without drawing any improper implications from this evidence. Any effect it might have had on their decision was therefore only cumulative.

Defendant's assignments of error in regard to the sentencing hearing will now be discussed in detail in order to (1) set forth the reasons requiring remand of this particular case for resentencing and (2) to clarify the requirements of the new sentencing act in regard to sentencing procedures.

Before discussing defendant's contentions concerning her sentence we will first consider our scope of review under the sentencing act. Prior to the passage of the new act the Subcommittee on Adult Correction of the Illinois House of Representatives submitted to the House Judiciary II Committee a draft of proposed changes to the Illinois Criminal Code. Its report included a recommendation that the appellate court's power to reduce sentences should be statutorily expanded. This aspect of its study reads:

"Under the present system where sentences are imposed within a statutorily determined parameter, it is most unusual for a reviewing court to consider the problem of equalization presented by a given sentence. Usually, because of appeal courts' lack of interest in such questions, the issue of fairness, as opposed to

legality, of a sentence is presented as an issue secondary to the primary substantive legal question.

The Illinois Supreme Court Rule 615(b) provides the appellate court with the power to 'reduce the punishment imposed by the trial court.' This power to reduce sentence is rarely used, because in most cases the trial court has not communicated on the record the basis of its sentencing decision. Without such information, the appeals court will generally not change the judgment of the trial judge, on the assumption that he had an adequate basis for his decision.

Therefore, for the purpose of providing for truly effective review of sentence the Subcommittee proposes that the sentencing judge be required in every case to state his reason for selecting the particular sentence imposed. Such a statement would be made part of the record for transmission to the reviewing court.

We also propose that the narrow construction of the appellate court's jurisdiction to reduce sentences should be statutorily [sic] expanded. The Illinois Supreme Court has ruled that while Rule 615(b) allows the reviewing court to reduce a term '* * * (it) was not intended to grant a court of review the authority to reduce a *penitentiary sentence to probation.*' The question of whether the reviewing court should be permitted to substitute any sentence that was available to the sentencing court is an important one that will be further explored by this Subcommittee." (Emphasis added.)

The House Judiciary II Committee adopted the recommendation of the Subcommittee and submitted a sample bill to the legislature which included the following addition to section 5—5—4 of the Unified Code of Corrections:

"Sec. 5—5—4.1. Appeal—Modification of Sentence. The defendant has the right of appeal in all cases from sentences entered on conviction of murder or any other Class of felony, however, in all such appeals there is a rebuttable presumption that the sentence imposed by the trial judge is proper. The court to which such appeal is properly taken is authorized to modify the sentence and enter any sentence that the trial judge could have entered."

The legislature followed the recommendation of the House Judiciary II Subcommittee by adding section 5—5—4.1, which reads:

"The defendant has the right of appeal in all cases from sentences entered on conviction of murder or any other Class of felony, however, in all such appeals there is a rebuttable presumption that the sentence imposed by the trial judge is proper.

The court to which such appeal is properly taken is authorized to modify the sentence and enter any sentence that the trial judge could have entered, including increasing or decreasing the sentence or entering an *alternative sentence to a prison term.* However, the appellate court may increase a sentence only in instances where a defendant has filed a notice of appeal and raises the issue of the sentence on appeal." (Emphasis added.) Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—5—4.1.

■■ The contention that the court improperly considered certain evidence in arriving at its sentencing determination will be dealt with first. Defendant alleges that the sentencing judge abused his discretion in considering offenses that the defendant was neither charged with nor convicted of, and that she was therefore not sentenced merely for the delivery of 0.3 grams of PCP. At the sentencing hearing the judge made specific reference to the testimony of the State's witness wherein the defendant stated to him that she could get cocaine through her Chicago connection or anything else the purchaser wanted in whatever quantity he wanted. Defendant contends that consideration of such information violates the presumption of innocence as well as defendant's right to have only credible information taken into account. Although the general rule is that a sentencing court is not bound by the usual rules of evidence, it must insure that the information considered is accurate. (*People v. Stoutenborough* (1978), 64 Ill. App. 3d 489, 381 N.E.2d 415.) Defendant contends that there was no reliable evidence that she could, in fact, deliver cocaine and that it is just as probable that this statement was an idle boast or unfounded claim. The court is confined to consideration of the facts at hand and not mere conjecture. Information concerning other criminal conduct by the defendant should be supported by competent evidence, such as first-hand testimony by witnesses involved in the acts, and not mere allegations or hearsay accounts. (*People v. Stoutenborough* (1978), 64 Ill. App. 3d 489, 494.) The witness in this case was witness only to defendant's statement of ability and not to any actual wrongdoing insofar as cocaine is concerned. Although the logical inference is that one is able to do what one claims to do, the record does not substantiate that conclusion in this case. Agent Murray testified that his primary purpose in making the second and third visits to defendant's residence was to purchase cocaine, and he specifically told the defendant he would be back for that reason. No sale of cocaine was ever made by the defendant despite Murray's testimony that her connection had come through and there was a large amount of cocaine in the area. Murray testified that he made no further trips to her home after learning of this availability to see if he could, in fact, obtain any cocaine. According to the record, the defendant was apparently unable to supply Murray with any cocaine

although he made several attempts to get it. Furthermore, the agent initiated the cocaine discussion. Defendant did not solicit his potential purchases in this regard. The judge's reliance on this factor therefore appears to be unfounded.

The concern with whether a sentencing judge's statement of and reliance upon certain factors is objectively verifiable is because of the informational base which the new statute strives to set forth and its overall policy of promoting uniformity of sentences by limiting judicial discretion. (See *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670, for an analysis of the legislative history and underlying policies of the new sentencing law.) The purpose behind the statement of reasons provision of sections 5—4—1(c) and 5—8—1(b) requiring a sentencing judge to set forth his reasons for imposing a particular sentence in felony cases is to enable reviewing courts to determine just what went into the sentencing decision and whether it is consistent with the statutory objectives. One problem with the new statute is that it makes no provision for weighing the various factors in aggravation and mitigation against each other or for choosing between them in order of importance. This infers that a sentencing judge is still free to exercise his discretion by emphasizing one more than another in a particular case, although all of them must be considered to some degree. (Ill. Rev. Stat. 1977 Supp., ch. 38, pars. 1005—5—3.1 and 1005—5—3.2.) The danger of too much or too little emphasis on certain factors is handled by giving appellate courts a broader scope of review and inquiry into the underlying bases for any sentencing decision. Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—5—4.1; *People v. Choate.*

■■ Although the State has cited several cases in which offers to sell drugs other than those the subject of the immediate proceeding were considered on the issue of probation, those cases were not decided under a statutory policy in favor of probation as a first alternative. (*People v. Pope* (1975), 31 Ill. App. 3d 990, 334 N.E.2d 366; *People v. Profit* (1976), 37 Ill. App. 3d 918, 347 N.E.2d 67.) Greater emphasis on such information is naturally warranted where probation is a last alternative. Sentencing courts are now under a duty to objectively scrutinize all information presented at the sentencing hearing to see if it can be used to justify probation—not deny it.

■■ Defendant's next contention of error concerns the court's improper inference and consideration of perjury by the defendant due to the fact the jury apparently disbelieved her story. This is based upon the judge's statement that she failed to explain her signature on the application form and consequently "the jury drew the only conclusion it could, that she was dealing a false hand. The court draws the same conclusion." Case law in Illinois prohibits the enhancement of a sentence for perjury perceived by

the judge during the course of a trial. (*People v. Cowherd* (1978), 63 Ill. App. 3d 229; *People v. White* (1971), 130 Ill. App. 2d 775, 267 N.E.2d 129.) The reason for this is the chilling effect it would have upon a defendant's decision to testify on his own behalf, since such a decision assumes the risk that the jury will not believe him. (*Scott v. United States* (D.C. Cir. 1969), 419 F.2d 264.) The court clearly stated that it was taking this factor into consideration in denying probation, and that probation in such an instance would deprecate the seriousness of her conduct. This compels us to remand the case for renewed sentencing without consideration of this factor.

Defendant's remaining contentions that the court erroneously failed to read and consider the presentence report and that the denial of probation was arbitrary in view of defendant's potential for rehabilitation will be discussed together, since they both involve important policy considerations on the new statute.

■■ While the new sentencing law is designed to promote the uniformity of sentences for similar type offenses and offenders, it has not discarded the prior policy of attempting to rehabilitate those convicted of crime. The only change relates to the method of rehabilitation. Imprisonment has been discarded as a method of rehabilitation and recognized instead for its punitive aspects. Probation has been declared the new vehicle of reform. In keeping with this policy, imprisonment should be resorted to only when a defendant is not a successful candidate for rehabilitation and the real priority is to keep incorrigibles off the street. Aspen, *New Class X Sentencing Law: An Analysis*, 78 Ill. Bar Journal 344 (1978).

In keeping with the new statutory policy of promoting sentence uniformity, the amended statute has set forth automatic guidelines to be followed in sentencing any defendant. To compensate for the fact that offenders are not as easy to categorize as offenses, the statute requires that identical factors be taken into account for every single defendant. (Ill. Rev. Stat. 1977 Supp., ch. 38, pars. 1005—3—1 through 1005—6—1.) The failure to do so presumptively renders the sentence inappropriate.

Section 5—4—1(a)(2) requires the court to consider any presentence reports in deciding what sentence to impose. (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—4—1(2).) The contents of such reports are seen as essential in enabling a court to fulfill the dual statutory obligations of rehabilitation and uniformity. The judge in the instant case did not expressly state on the record that he had read and considered the presentence report, although the record does indicate that he was aware of the existence of such a report. A ritualistic recital of compliance with section 5—4—1(a)(2) is no guarantee that it has, in fact, been complied with, nor is the lack of any such statement an automatic indication of noncompliance. A fair reading of the whole record is necessary to determine

whether a trial judge complied with the spirit as well as the letter of section 5—4—1(a)(2) by showing a familiarity and application of the contents of any presentence reports. In the present case, the record indicates that the judge was familiar with the information contained in the presentence report although he did not equally apply it to the sentencing considerations set forth in sections 5—5—3.1 and 5—5—3.2, the provisions regarding mitigating and aggravating factors, and section 5—6—1, the provision making probation a preferred sentencing choice. Specifically, the facts that the defendant had a better than average education and possessed good working skills, and that she had a good employment history were not considered at all in passing on the propriety of probation.

■■ It further appears from the record that the presentence report itself was insufficient, although the defendant has not specifically argued this point. Any defects in this regard are not waived by the defendant's failure to object, since the contents of such reports are specified by the legislature and the only exception in the statute relates to stipulated sentences. (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—3—1.) An informed decision as to the most appropriate course of action in terms of the dual statutory policies cannot be made without all of the information specified in the statute. (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—3—2.) In this case the presentence report made no mention of sentencing alternatives or of special programs within the community to assist in defendant's rehabilitation, or of any plan based upon the adjustment needs of the defendant which could utilize available community resources. The report took a negative approach, utilizing remote information from defendant's high school days, and did not adequately discuss her post-arrest status in terms of her employment record. These defects furthermore were not cured by the sentencing hearing which did go into sentencing alternatives because the information was incomplete.

For these reasons, the cause is remanded to the circuit court of Marion County for a new sentencing hearing in accordance with the views expressed herein.

Affirmed in part, reversed in part, and remanded for new sentencing.

KUNCE, J., concurs.

JONES, J., dissents.