THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JIMMY D. WILLIAMS, Defendant-Appellant.

Fifth District    No. 78-269

Opinion filed January 24, 1980.

964

Richard J. Wilson and Daniel Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott Wilzbach, State's Attorney, of Salem (Linda Watkins, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

The defendant, Jimmy D. Williams, was charged by information with the murder of LaMar Meeks. Following a jury trial, at which he interposed a defense of justifiable use of force, defendant was convicted of murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)) and sentenced to 20 to 40 years in the penitentiary. Defendant appeals contending (1) the information was fatally defective, (2) omissions in the instructions to the jury require reversal, (3) the State's impeachment of a defense witness was not properly completed, and (4) the fairness of defendant's trial was adversely affected by the prosecutor's closing argument.

The matter in question occurred outside Shorty's Lounge in Centralia on September 18, 1977, just after the lounge closed for the night. Shortly after 2 a.m., defendant and the victim became involved in an argument. Several State's witnesses saw all or part of that argument and the subsequent shooting. They testified that the victim seized defendant by the leg or trousers and threw him over a fireplug. Defendant got up; the conversation became conciliatory, and they shook hands.

What happened next is in dispute. According to witnesses for the State, the victim walked into the intersection in front of Shorty's, where he spoke with two friends. The victim asked for and received a beer. Defendant walked into the intersection, pulled a gun from beneath his coat, and spoke to the victim. When the victim turned, defendant shot

him from a distance of 10 to 20 feet. The victim spun left, grabbing at his chest and shoulder. Defendant fired another shot quickly after the first. The victim retreated to the side of a building, where he fell or laid on the ground. Defendant walked over to where the victim was lying. The victim begged defendant not to shoot him again. The witnesses heard two or three more shots.

Defendant's account of these events differed substantially from that summarized above. He testified he ate dinner with his brother at a Centralia restaurant. As they left, they noticed and joined a sidewalk dice game. After they had been playing for some time, the victim called defendant away and asked him to take a pistol in pawn for $20. Defendant agreed to do so and accepted the pistol. After the game dispersed, the victim asked for his pistol back, telling defendant he would pay him later. Defendant refused. The victim told defendant he would get his pistol back "one way or the other" before the day was through.

Defendant then went to Shorty's Lounge, where he stayed until closing. While he was seated at a table there, the victim struck him twice from behind.

When defendant left Shorty's in the company of two friends, the victim blocked the sidewalk on which defendant was walking. Defendant stopped, and the victim approached. After they traded insults, the victim knocked defendant over a fireplug. Defendant asked the bartender to let him inside the bar; he was told it was closed. The two men then shook hands. The victim struck defendant across the throat.

Defendant testified he saw his friend Henry Leake driving away in defendant's brother's car, and tried unsuccessfully to stop him. Looking toward the street, he saw the victim standing with two men in the intersection. The victim came over to where defendant stood and seized his arm. Defendant pulled away; the victim returned to the street. Defendant attempted to escape on foot. The victim told him to stop, that he was not through with him yet, and that he was coming to get his pistol now. The victim ran toward him; the other two men also came toward him, moving more slowly. Defendant testified he thought "it was me or either LaMar Meeks." He pulled out the victim's pistol and shot twice quickly. The victim turned and ran to the right; the other two men ran left. Defendant did not know whether the victim was shot. Defendant ran up to where the victim was "laying" and fired two more shots.

Defendant testified on cross-examination that he could not see the victim well during the second set of shots. He testified he thought the victim was lying in ambush at the time. He described the victim as "in a squat" at that time.

A police officer and a Department of Law Enforcement technician testified regarding their examinations of the victim and his clothing.

Officer Simer identified a photograph of the victim's right knee area, which showed a bullet entrance wound below the knee and an exit wound above the knee. Bill Austin, the technician, testified he found four holes in the victim's shirt, one at midsternum and the rest in the lower left waist area. He also found an entrance and an exit hole in one leg of the victim's trousers, the exit hole higher than the entrance. In his opinion, either the gun was held lower than the entrance wound, or the victim was lying down when shot. This witness indicated he found no powder burns, either on the victim's clothing or on the body at the autopsy. In his opinion, the lack of powder on the clothing indicated the victim was approximately five feet or more from the gun muzzle when shot.

Terry Williams, defendant's brother, testified in defendant's behalf regarding the events of the early evening, including the dice games and the passing of money between his brother and the victim. He heard the shots, but did not see the shooting.

Henry Leake testified for defendant that both defendant and the victim were his friends. He saw the argument which resulted in defendant being "pushed" against the fireplug. He left the area after that argument. According to this witness, he tried to persuade defendant to leave with him at that time, but defendant refused.

Several witnesses testified they were in Shorty's Lounge during the night in question. None, including the proprietor, saw the victim inside the lounge. "Shorty" testified that, although the victim was his friend, the victim had been barred from the lounge.

Defendant's first contention of error is that the trial court improperly refused to dismiss the instant information, in which it is alleged that defendant "shot LaMar Meeks with a pistol causing the death of said LaMar Meeks knowing that said act created a strong probability of death or great bodily harm to LaMar Meeks * * *." Defendant assigns as error the State's failure to allege that said act was done "without lawful justification." Section 9—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)) provides that a person "who kills an individual without lawful justification commits murder if, in performing the acts which cause the death * * * [h]e knows that such acts create a strong probability of death or great bodily harm to that individual * * *." In defendant's answer to the State's discovery motion, it was stated that defendant contemplated interposing a defense of justifiable homicide. After the jury was selected, the State moved to amend the information by inserting the words "without lawful justification." Defendant opposed the motion and moved to dismiss the prosecution. The court denied both motions.

■■ The State asserts in its brief that an information is sufficient if it contains sufficient information to apprise defendant of the charge with

sufficient particularity to prepare his defense, and to permit him to plead his conviction or acquittal in bar to any subsequent prosecution for the same offense. If an indictment or information satisfies the foregoing test, it will be upheld when attacked for the first time on appeal. (*People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437; *People v. Lofton* (1976), 42 Ill. App. 3d 211, 355 N.E.2d 674, *rev'd on other grounds* (1977), 69 Ill. 2d 67, 370 N.E.2d 517.) In order to withstand a pretrial motion or a motion in arrest of judgment, however, a charging instrument must strictly comply with the explicitly stated requirements of section 111—3(a) of the Code of Criminal Procedure (*People v. Dyer* (1977), 51 Ill. App. 3d 731, 366 N.E.2d 572; Ill. Rev. Stat. 1977, ch. 38, par. 111—3(a).) That section requires that the charge set forth "the nature and elements of the offense charged." The instant information was challenged both in defendant's motion to dismiss the charge (before any evidence was presented) and in his motion in arrest of judgment. We must, therefore, apply the more stringent test.

Accordingly, we must determine whether absence of lawful justification is an "element" of the offense of murder which must be pleaded in the charging instrument. We hold that failure to allege absence of lawful justification is a mere formal defect which does not subject the information to dismissal.

■■ A defense of justifiable use of force is an affirmative defense. (Ill. Rev. Stat. 1977, ch. 38, par. 7—14; *People v. Garcia* (1967), 90 Ill. App. 2d 396, 232 N.E.2d 810.) An information shall not be dismissed and may be amended on motion by the State's Attorney or defendant at any time because of formal defects, including the failure to negate any exception, any excuse or proviso contained in the statute defining the offense (Ill. Rev. Stat. 1977, ch. 38, par. 111—5). The purpose of affirmative defenses and exemption provisions is to relieve the State of the time-consuming and wasteful task of alleging and proving many negative propositions which, if proven in the affirmative, would provide a good defense to the charges. (*People v. Biers* (1976), 41 Ill. App. 3d 576, 353 N.E.2d 389; see also *People v. Meeks* (1979), 75 Ill. App. 3d 357, 393 N.E.2d 1190.) The common affirmative defenses of insanity, infancy, self-defense, and ignorance or mistake, are normally not involved in criminal cases, and there is no good reason to require the State to allege the nonexistence of such defenses in each case. Once the issue of self-defense is raised by some minimum amount of evidence which is sufficient to warrant submission of the issue to the jury, the affirmative defense becomes another element of the offense and the State has the burden of proving defendant guilty beyond a reasonable doubt as to that issue as well. (*People v. Warren* (1964), 52 Ill. App. 2d 374, 202 N.E.2d 131.) "Affirmative defense" as the term is used in the Criminal Code of 1961

means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon. (Ill. Rev. Stat. 1977, ch. 38, par. 3—2(a).) If the issue in an affirmative defense is raised then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense. Ill. Rev. Stat. 1977, ch. 38, par. 3—2(b).

■■ In our opinion, the words "without lawful justification" contained in the statutory definition of murder are merely a reference to affirmative defenses defendant could interpose once charged. Once defendant interposes such a defense by the presentation of evidence of justification, proof of the absence of such justification beyond a reasonable doubt becomes an element of the State's case-in-chief. At the time the charging document is filed, however, no such element exists in the State's case. Unless defendant presents, for example, some evidence of self-defense, the State's proof is complete if the act which caused the death and the requisite mental state are proved beyond a reasonable doubt. In our view, it is anomalous to reverse defendant's conviction because the State failed to allege a matter it was not required to prove. In view of the authorities cited above, we do not interpret section 111—3(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 111—3(a)) as requiring such an anomaly.

●■■ In so holding, we are aware of cases stating that the elements of the offense of murder include the knowing, intentional, and unlawful taking of the life of another, including *People v. Walden* (1976), 43 Ill. App. 3d 744, 357 N.E.2d 232, and *People v. Clemens* (1972), 9 Ill. App. 3d 312, 292 N.E.2d 232, both cited by defendant. The court in *Walden* and *Clemens* was merely stating what the State was ultimately required to prove in those cases, not what the State was required to allege at the outset. We have found no authority requiring dismissal of a charge of murder for failure to allege that the act was done "without lawful justification." Accordingly, we view omission of the words "without lawful justification" from the instant information as a mere formal defect which does not subject the charge to dismissal. (Ill. Rev. Stat. 1977, ch. 38, par. 111—5.) The trial court should grant motions to amend informations and indictments to correct formal defects (Ill. Rev. Stat. 1977, ch. 38, par. 111—5), and the State's motion to amend the information in this case should have been granted.

Turning to defendant's contention that omissions in the jury instructions require reversal, defendant assigns as error the giving of the following instruction:

> "To sustain the charge of murder, the State must prove the following propositions:

First: That the defendant performed the acts which caused the death of LaMar Meeks; and

Second: That when the defendant did so, he knew that his acts created a strong probability of death or great bodily harm to LaMar Meeks; and

Third: That the defendant was not justified in using the force which he used.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty." (Illinois Pattern Jury Instructions, Criminal, No. 25.05 (1968) (hereinafter IPI Criminal).)

Defendant urges he was denied a fair trial because the above instruction did not include a fourth proposition, as follows:

"Fourth: That the defendant did not believe that circumstances existed which justified the use of the force which he used." IPI Criminal No. 27.01.

We note that defendant clearly raised the issue of justifiable use of force; the State was then required to prove beyond a reasonable doubt that defendant's use of force was not justifiable.

The elements or issues of the defense of self-defense should be treated in two ways: first, by definition following the definition of the crime with which defendant is charged, and second, in the same instruction with the issues or elements of the crime and the State's burden of proof. The jury should receive a single instruction covering all of the issues. (*People v. Wright* (1974), 24 Ill. App. 3d 536, 321 N.E.2d 52.) When the language of an instruction is inaccurate and, standing alone, might have misled the jury, others in the series may explain it, remove the error or render it harmless. (*People v. Wright.*) It has long been held that the jury is properly instructed if the series of instructions, construed as a whole, fully and properly informs the jury of the law applicable to the case. *People v. Allen* (1976), 35 Ill. App. 3d 342, 341 N.E.2d 431; *People v. Tiller* (1978), 61 Ill. App. 3d 785, 378 N.E.2d 282.

In the instant case the jury was read IPI Criminal No. 2.03 (presumption of innocence, including the State's burden of proving the defendant guilty beyond a reasonable doubt and the defendant not being required to prove his innocence) and IPI Criminal No. 24.06 (justifiable use of force), in addition to IPI Criminal No. 25.05, above quoted. IPI Criminal No. 7.02 (burden of proof of murder, without mention of self-defense) was not given.

██ This series of instructions, construed together, adequately advised the jury as to the law applicable to defendant's theory of the case, self-defense, and of the State's burden of proof of guilt beyond a reasonable doubt. In *People v. Allen* (1976), 35 Ill. App. 3d 342, 341 N.E.2d 431, where defendant was charged with murder and raised a defense of self-defense this court held the jury was adequately instructed as to the defendant's defense of self-defense and the State's burden of proof where IPI Criminal Nos. 2.03, 7.02, and 24.06 were given. This court noted in *Allen* that the better practice would have been to give IPI Criminal No. 25.05 in place of IPI Criminal No. 7.02. (Accord, *People v. Caldwell* (1976), 39 Ill. App. 3d 1, 349 N.E.2d 462.) We will not fault the trial court for following the "better practice" as was done in the instant case, particularly where defense counsel did not tender substitute instructions.

It should be noted that defense counsel in closing argument dwelled at length upon the State's burden of proof beyond a reasonable doubt that defendant was not justified in believing his conduct was necessary.

Defendant relies upon *People v. Wright* (1974), 24 Ill. App. 3d 536, 321 N.E.2d 52, on this point. However, in that case the court found reversible error in the giving of two contradictory issues instructions, IPI Criminal No. 7.02 and IPI Criminal No. 25.05. The latter informed the jury the State was required to prove beyond a reasonable doubt that defendant's use of force was not justified; the former stated defendant could be found guilty of murder without proof that defendant's use of force was not justified. No contradictory instructions appear in the instant case.

Accordingly, we consider the jury adequately instructed in the instant case.

Defendant next assigns as error the State's cross-examination of a defense witness, Henry Leake. Leake testified on direct examination that he saw the argument between the victim and defendant in which defendant was "pushed" against a fireplug. The witness left the area prior to the shooting. On cross-examination, this colloquy occurred:

"Q. And then it is true, isn't it, that Jimmy Williams came up to the car while you were in it, getting ready to leave?

A. Yes, he came up.

Q. And isn't it true that you asked Jimmy to leave with you?

A. Yes.

Q. Why did you ask Jimmy to leave?

A. Well, I didn't want to see them get in a fight. I asked both of them to leave.

Q. You were in the car, had the keys and Jimmy Williams could have gone with you if he had wanted to, right?

A. Yes.

Q. And then you left? Would you describe Jimmy Williams as a high-tempered person?

A. No.

Q. Do you recall testifying, Mr. Leake, at the coroner's inquest on October 5 of this year at City Hall in Centralia? * * *

A. Yes.

Q. [Wilzbach]: Do you recall the question by the coroner, "What made you feel at that time that you needed to leave in a hurry", your answer, "I don't know. He just don't take too much, high-tempered I guess or whatever"? Do you recall that?

A. No.

Q. You don't recall that question and answer from the coroner and answer by yourself?

A. I remember him asking the questions, remember everything I said, I don't know.

Q. You think you might have said that?

A. It's possible. I don't know. I was asked so many things. Tried to put me in the middle of it, you know.

Q. That's right. They tried to put you in the middle of it. Fact is, you never saw what happened at the time of the shooting. You weren't even in the area, is that right?

A. Correct.

Q. You don't know what happened between LaMar and Jimmy Williams?

A. After I left?

Q. Right.

A. No."

No evidence was adduced regarding Leake's testimony at the coroner's inquest. Subsequent to Leake's testimony, defendant testified in his own behalf that he saw Leake driving away before the shooting. Defendant ran into the street in an unsuccessful attempt to stop Leake from leaving.

Defendant urges that the above-quoted cross-examination of Leake was an improper insinuation as to the existence of facts not shown by other evidence. The State concedes that the "incomplete" impeachment was error, but contends it was harmless and that defendant waived the issue by failure to object or raise it in the post-trial motion.

●■ ■ In view of the fact that the incompleteness of the cross-examination of Leake was not apparent until later, when the State failed to follow it up, defendant's failure to object during the cross-examination itself is understandable (see *People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353). However, no excuse appears for defense counsel's failure to object when the State's inability or unwillingness to produce evidence of Leake's testimony at the coroner's inquest became apparent. Also, defendant has

waived this point on review for failure to raise it in his post-trial motion. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Nevertheless, we have considered the issue and have concluded that the error was harmless beyond a reasonable doubt. The evidence was not closely balanced. Defendant's testimony at trial, which tended to show he shot the victim in self-defense, was contradicted by the testimony of several witnesses, most of them disinterested. Their testimony strongly supports the State's theory at trial that defendant shot Meeks in anger rather than fear. This was supported by evidence of the bullet entrance and exit wounds in the victim's leg, which indicate the victim was not standing upright when that shot was fired.

It is also significant in this regard that the testimony of Henry Leake, the impeached witness, was of no real help to defendant's case. Henry Leake's testimony directly contradicted defendant's testimony that defendant tried to leave with Leake just prior to the shooting. It is uncontradicted that Leake was not present when the shooting occurred. We conclude that the incomplete impeachment could not have had any significant effect on defendant's trial. *People v. Nuccio,* relied upon by defendant, is distinguishable as a matter of degree; the instant case does not involve such a prolonged course of questioning, nor was the instant case a close one.

●■ ■ Defendant's final contention on appeal concerns remarks by the prosecutor in closing argument which defendant characterizes as improper and prejudicial. None of those comments was objected to at trial or referred to in defendant's post-trial motion, and we could deem objections thereto waived for purposes of appeal. (*People v. Moore* (1973), 55 Ill. 2d 570, 304 N.E.2d 622; *People v. Pickett.*) Nevertheless, we have considered those comments, including the following:

> "There weren't any negotiated pleas in this case because this defendant flat dowsn't [sic] deserve it. I might have been able to negotiate a plea for manslaughter. I wasn't going to do it. Not when he stood over him and put two bullet holes in him when he's begging for his life. He doesn't deserve it."

There was no evidence of record that defendant engaged in plea negotiations involving this offense. The prosecutor's statement suggested that there were. Such insinuation was an improper reference to the prosecutor's personal belief that defendant was guilty. (*People v. Hopkins* (1970), 124 Ill. App. 2d 415, 259 N.E.2d 577.) The great weight of evidence of guilt adduced in this case (its sufficiency is not challenged on appeal) leads us to conclude that such comment could not have affected the fairness of defendant's trial. Without substantial prejudice to the accused, improper remarks of counsel cannot constitute reversible error. *People v. Gunner* (1979), 73 Ill. App. 3d 533, 392 N.E.2d 165.

We have examined the remaining comments by the prosecutor, assigned as error by defendant. We have determined that none could have prejudiced defendant's right to a fair trial, in view of the overwhelming evidence of his guilt.

Affirmed.

KARNS and KASSERMAN, JJ., concur.