733 A.2d 1125

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
RONALD SEXTON, DEFENDANT–RESPONDENT.

Argued May 4, 1999—Decided July 15, 1999.

*Teresa A. Blair*, Deputy Attorney General, argued the cause for appellant (*Peter Verniero*, Attorney General of New Jersey, attorney).

*Judith L. Borman*, First Assistant Deputy Public Defender, argued the cause for respondent (*Ivelisse Torres*, Public Defender, attorney).

The opinion of the Court was delivered by

O'HERN, J.

"Once again, we must reconcile anomalies and ambiguities that inhere in the Code of Criminal Justice ... occasioned by the Legislature's selective inclusion and omission of provisions of its conceptual source, the Model Penal Code (MPC)." *Richardson v. Nickolopoulos*, 110 *N.J.* 241, 242, 540 *A*.2d 1246 (1988).

The "anomalies and ambiguities" presented in this appeal concern the meaning of *N.J.S.A.* 2C:2–4, governing the so-called mistake-of-fact defense to a criminal charge. Specifically, the question is how to explain to the jury the effect of a mistake of fact on a charge of reckless conduct. The context is that of an accusation of aggravated or reckless manslaughter, after a gun went off, killing the seventeen-year-old victim, Alquadir Matthews. From the evidence, a jury could have found that the then fifteen-year-old defendant had pointed a gun at another and pulled the

trigger. Defendant claims that he mistakenly believed the gun was not loaded.

## I

The facts of the case are more fully set forth in the opinion below. 311 *N.J.Super.* 70, 709 *A.*2d 288 (App.Div.1998). We repeat those facts essential to our ruling.

On May 10, 1993, Shakirah Jones, a seventeen-year-old friend of defendant and decedent, overheard the two young men having what she described as a "typical argument." The two young men walked from a sidewalk into a vacant lot. Jones saw defendant with a gun in his hand, but she did not see defendant shoot Matthews.

Jones heard Matthews tell defendant, "there are no bullets in that gun," and then walk away. Defendant called Matthews back and said, "you think there are no bullets in this gun?" Matthews replied, "yeah." Jones heard the gun go off. A single bullet killed Matthews.

Acting on information received from Jones, police recovered a small caliber automatic pistol near the crime scene. The police did not trace the ownership of the gun, which may have been owned by Matthews's grandmother.

A ballistics expert testified that there was a spring missing from the gun's magazine, which prevented the other bullets from going into the chamber after the first bullet was discharged. In this condition, the gun would have to be loaded manually by feeding the live cartridge into the chamber prior to firing.

The expert later clarified that, if the magazine had been removed after one round had been inserted into the chamber, it would be impossible to see whether the gun was loaded without pulling the slide that covered the chamber to the rear. The expert agreed that, for someone unfamiliar with guns, once the magazine was removed, it was "probably a possible assumption" that the gun was unloaded.

Defendant's version was that when the two young men were in the lot, Matthews showed defendant a gun and "told me the gun was empty." Defendant "asked him was he sure," and "he said yes." When Matthews asked if defendant would like to see the gun, defendant said "yes." Defendant "took the gun and was looking at it, and "it just went off." He never unloaded the gun or checked to see if there were any bullets in the gun. He had never before owned or shot a gun.

A grand jury indicted defendant for purposeful or knowing murder, possession of a handgun without a permit, and possession of a handgun for an unlawful purpose. At the close of the State's case, defendant moved to dismiss the murder charge because the victim had told him that the gun was not loaded. The court denied the motion.

The court charged murder and the lesser-included offenses of aggravated manslaughter and reckless manslaughter. Concerning defendant's version of the facts, the court said:

Defense contends this was a tragic accident. That Alquadir [Matthews], says the defense, handed the gun to Ronald [defendant]. Alquadir told Ronald, you know, the gun was not loaded. Ronald believed the gun was not loaded. Ronald did not think the gun was pointed at Alquadir when it went off. But the gun went off accidentally and, says the defense, that is a very tragic and sad accident but it is not a crime.

If, after considering all the evidence in this case, including the evidence presented by the defense as well as the evidence presented by the State, if you have a reasonable doubt in your mind as to whether the State has proven all the elements of any of these crimes: murder, aggravated manslaughter, or reckless manslaughter, you must find the defendant not guilty of those crimes.

The jury found defendant not guilty of murder, aggravated manslaughter, or possession of a handgun for an unlawful purpose, but guilty of reckless manslaughter and unlawful possession of a handgun without a permit.

On the charge of reckless manslaughter, the court sentenced defendant to the presumptive term of seven years, three of which were parole ineligible. For possession of a handgun without a permit, the court sentenced defendant to a concurrent four-year term with no period of parole ineligibility. The court recom-

mended that defendant serve his sentence at the Youth Correction and Reception Center.

On appeal, the Appellate Division reversed defendant's conviction on multiple grounds. The court found that the trial judge erroneously charged the jury on first degree murder, despite the absence of any credible evidence that defendant intended to kill or seriously injure Matthews. The court concluded that the unwarranted charge had the potential of leading the jury to a compromise verdict on reckless manslaughter instead of acquitting him entirely. 311 *N.J.Super.* at 81–82, 709 *A.*2d 288 (citing *State v. Christener,* 71 *N.J.* 55, 362 *A.*2d 1153 (1976)).

The Appellate Division also held that the trial court should have charged the jury that the State bore the burden of disproving beyond a reasonable doubt defendant's mistake-of-fact defense, and that the failure to do so was plain error. The Appellate Division relied on *Wilson v. Tard,* 593 *F.Supp.* 1091 (D.N.J.1984), in which Judge Stern, applying New Jersey law, reversed a conviction of aggravated manslaughter because the trial court had charged the jury that defendant carried the burden of establishing his mistake-of-fact defense by a preponderance of the evidence. The Appellate Division noted that "[t]he critical holding of *Wilson* is that once the defendant, as here, presents evidence of a reasonable mistake of fact that would refute an essential element of the crime charged, the State's burden of proving each element beyond a reasonable doubt includes disproving the reasonable mistake of fact." 311 *N.J.Super.* at 83, 709 *A.*2d 288.

The Appellate Division also held that, by failing to disclose material evidence that the gun was owned by Matthews's grandmother, the State had violated its obligation under *Brady v. Maryland,* 373 *U.S.* 83, 83 *S.Ct.* 1194, 10 *L.Ed.*2d 215 (1963). Finally, the Appellate Division found that defendant's counsel was ineffective for failing to have requested the ownership information from the prosecutor.

We granted the State's petition for certification, limited to the issue of whether "mistake of fact was a defense to the charge of reckless manslaughter." —— *N.J.* ——, —— *A.*2d —— (1998).

## II

### A.

On an earlier occasion, the Court wrote: "Twelve centuries of debate have yet to resolve the law's attitude about the criminal mind." *State v. Breakiron,* 108 *N.J.* 591, 595, 532 *A.*2d 199 (1987). At common law, proof of an *actus reus* and *mens rea* sufficed to establish criminal liability. Today's statutes require a voluntary act and a culpable state of mind as the minimum conditions for liability. *See N.J.S.A.* 2C:2-1 and -2. At its earliest stages, the common law imposed liability without regard to a *mens rea* or culpable state of mind. *Breakiron, supra,* 108 *N.J.* at 596, 532 *A.*2d 199. "If someone caused harm, the person was accountable for it without any consideration of intent." *Id.* at 596-97, 532 *A.*2d 199 (citing T. Brian Hogan, *Crime and Punishment and Responsibility,* 24 *Vill. L.Rev.* 690 (1979)). At early common law, all homicides were capital. By examining the mental states involved, such as deliberation, premeditation, or malice, English common law gradually sought to distinguish homicides that were murder from those that were manslaughter, differentiating "criminal from non-criminal homicides, and [capital] homicides from those that were not." *Id.* at 597, 532 *A.*2d 199 (quoting Herbert Wechsler & Jerome Michael, *A Rationale of the Law of Homicide: I,* 37 *Colum. L.Rev.* 701, 702 (1937)). The common law had frequently focused on the conduct of the reasonable person as the measure of responsibility. To resolve the variety, disparity, and confusion concerning the mental elements of crime, the drafters of the MPC attempted to establish distinct levels of culpability applicable to all criminal offenses. The MPC "obliterated ill-defined, confusing common law language and concepts and replaced them with four specifically defined hierarchial levels of culpability in relation to the three objective element types used to define crimes." Dannye

Holley, *The Influence of the Model Penal Code's Culpability Provisions on State Legislatures: A Study of Lost Opportunities, Including Abolishing the Mistake of Fact Doctrine,* 27 *SW. U.L.Rev.* 229, 230 (1997).

The 1979 New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to –104–9 (the Code), followed the mental-state formulation of the MPC. The Code provides generally that no person should be guilty of an offense unless the person "acted purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense." *N.J.S.A.* 2C:2–2a. The precise delineation of these four states of criminal culpability, each drawn from the MPC and each defined in *N.J.S.A.* 2C:2–2b, represented an effort, as a framer of the Code described it, "to achieve greater individual justice through a closer relation between guilt and culpability, requiring workable definitions of the various culpability factors. These factors must be related precisely to each element of an offense, defense, or mitigation, and all unnecessary limitations upon individual culpability should be eliminated." Robert E. Knowlton, *Comments Upon the New Jersey Penal Code,* 32 *Rutgers L.Rev.* 1, 2 (1979) (footnote omitted). "[T]he material elements of an offense vary in that they may involve (1) conduct per se, (2) the attendant circumstances of conduct, or (3) the result of conduct. The MPC attempts to define culpability status for each." *State v. Harmon,* 104 *N.J.* 189, 201 n. 7, 516 *A.*2d 1047 (1986).

The MPC also contains an express provision for mistake-of-fact defenses.[1] "Its mistake of fact provision, while creating potential for conceptual confusion by continuing the common law characterization of the doctrine as a 'defense,' in fact sought to clarify the common law." Holley, *supra,* 27 *SW. U.L.Rev.* at 232. The MPC expressly recognized that the doctrine did not sanction a true defense, but rather was an attack on the prosecution's ability to

---

[1] The MPC's provision covers both mistake of fact and mistake of law. We confine this discussion to mistake of fact.

prove the requisite culpable mental state for at least one objective element of the crime. Hence, unlike enactments in many pre-MPC states, "the MPC expressly recognizes that the mistake of an accused need not be a reasonable mistake unless the Legislature has expressly decided that the requisite culpable mental state was minimal—'negligence' or perhaps, 'recklessness.'" *Id.* at 232–33.

The MPC provides that, "Ignorance or mistake as to a matter of fact or law is a defense if: (a) the ignorance or mistake negatives the purpose, knowledge, belief, recklessness or negligence required to establish a material element of the offense; or (b) the law provides that the state of mind established by such ignorance or mistake constitutes a defense." Model Penal Code § 2.04 (1962).

Whether a mistake would negate a required element of the offense, depended, of course, on the nature of the mistake and the state of mind that the offense required. This led commentators to observe:

> Technically, such provisions [for a mistake of fact defense] are unnecessary. They simply confirm what is stated elsewhere: 'No person may be convicted of an offense unless each element of such offense is proven beyond a reasonable doubt.' If the defendant's ignorance or mistake makes proof of a required culpability element impossible, the prosecution will necessarily fail in its proof of the offense.
>
> [Paul H. Robinson & Jane A. Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond*, 35 *Stan. L.Rev.* 681, 726–27 (1983) (quoting Model Penal Code § 1.12(1) (Proposed Official Draft 1962)).[2]

*See also* Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law*, § 5.1a (2d ed. 1986) ("Instead of speaking of ignorance or mistake of fact ... as a defense, it would be just as easy to note simply that the defendant cannot be convicted when it is shown that he does not have the mental state required by law for commission of that particular offense.")

---

[2] Comment 1 to Model Penal Code § 2.04 stated: "To put the matter as this subsection does is not to say anything that would not otherwise be true, even if no provision on the subject were made."

The Commentary to the Hawaii Criminal Code gives an easy example of how, under the MPC, a mistake of fact may negate culpability.

> [I]f a person is ignorant or mistaken as to a matter of fact ... the person's ignorance or mistake will, in appropriate circumstances, prevent the person from having the requisite culpability with respect to the fact ... as it actually exists. For example, a person who is mistaken (either reasonably, negligently, or reckless-ly) as to which one of a number of similar umbrellas on a rack is the person's and who takes another's umbrella should be afforded a defense to a charge of theft predicated on either intentionally or knowingly taking the property of another.... A reckless mistake would afford a defense to a charge requiring intent or knowledge—but not to an offense which required only recklessness or negligence. Similarly, a negligent mistake would afford a defense to a charge predicated on intent, knowledge, or recklessness—but not to an offense based on negligence.
>
> [*State v. Cavness*, 80 *Hawai'i* 460, 911 *P*.2d 95, 99–100 (Ct.App.1996).]

## B.

State legislatures, however, "in emulating the Model Penal Code's three culpability provisions (its culpability definitions, its guidelines for resolving the requisite culpable mental state, and its mistake of fact doctrine), have not always understood their interrelationship. Hence, these states have failed to coordinate the enactment of these three types of culpability provisions." Holley, *supra*, 27 *SW. U.L.Rev.* at 249–50. States have restricted the mistake-of-fact doctrine by imposing a reasonableness requirement. By thinking in terms of the reasonable person while failing to appreciate that the MPC's mistake-of-fact and culpability provisions are interrelated, these states have undermined the structure of the MPC. *Id.* at 249–53.

To explain, we may consider again the case of the absent-minded umbrella thief. If only a reasonable mistake will provide a defense to the charge of theft, the absent-minded but careless restaurant patron will have no defense to a charge of theft. *People v. Navarro*, 99 *Cal.App.3d Supp.* 1, 160 *Cal.Rptr.* 692 (1979), explains how a mistake of fact, even though it is unreasonable, may constitute a defense to a crime requiring a culpable mental state higher than recklessness or negligence. In *Navarro*, defendant took some wooden beams from a construction site. He

was charged with theft. He claimed that he thought the owner had abandoned the beams. The trial court instructed the jury that this would be a valid defense only if the scavenger's belief was reasonable. The reviewing court held that such an instruction was erroneous because if the jury "concluded that defendant in good faith believed that he had the right to take the beams, even though such belief was unreasonable ..., defendant was entitled to an acquittal since the specific intent required to be proved as an element of the offense had not been established." *Id.* at 697 (footnote omitted). Otherwise, one would end up imposing liability for theft on a lesser basis than knowledge or purpose to steal the property of another.

How then shall we resolve the problem created by the selective inclusion and exclusion of the culpability provisions of the MPC?

### III

The issue posed by our grant of certification was whether a mistake of fact was a defense to the charge of reckless manslaughter. The short answer to that question is: "It depends." The longer answer requires that we relate the type of mistake involved to the essential elements of the offense, the conduct proscribed, and the state of mind required to establish liability for the offense. Defendant insists that the State is required to disprove, beyond a reasonable doubt, his mistake-of-fact defense. Most states would agree with that statement. *See, e.g., People v. Andrews,* 632 *P.*2d 1012, 1016 (Colo.1981) (guilt of defendant must be established beyond reasonable doubt as to issue of mistaken belief); *People v. Mayberry,* 15 *Cal.*3d 143, 125 *Cal.Rptr.* 745, 542 *P.*2d 1337, 1346 (1975) (defendant required to raise only reasonable doubt as to mistake-of-fact defense); *People v. Williams,* 80 *Ill.App.*3d 963, 36 *Ill.Dec.* 112, 400 *N.E.*2d 532, 536 (1980) (state must disprove mistake or ignorance when raised). In *State v. Savoie,* 67 *N.J.* 439, 463 n. 8, 341 *A.*2d 598 (1975), the Court similarly said that once the defense of mistake of fact is raised, the burden of persuasion is on the State. Just what does that mean? Does it

mean that the State must prove that the mistake was unreasonable? We must begin by examining the language of the statute.

*N.J.S.A.* 2C:2–4a allows a defense of ignorance or mistake "if the defendant reasonably arrived at the conclusion underlying the mistake and" the mistake either "negatives the culpable mental state required to establish the offense" or "[t]he law provides that the state of mind established by such ignorance or mistake constitutes a defense." The crime of manslaughter is a form of criminal homicide. "A person is guilty of criminal homicide if [the actor] purposely, knowingly [or] recklessly . . . causes the death of another human being." *N.J.S.A.* 2C:11–2.[3] Criminal homicide constitutes aggravated manslaughter, a first-degree offense with special sentencing provisions, when the actor "recklessly causes death under circumstances manifesting extreme indifference to human life." *N.J.S.A.* 2C:11–4a. Criminal homicide constitutes manslaughter, a second-degree crime, "when . . . [i]t is committed recklessly," that is, when the actor has recklessly caused death. *N.J.S.A.* 2C:11–4b.[4]

In this case, the jury has acquitted defendant of aggravated manslaughter. He can be retried only for reckless manslaughter. The culpable mental state of the offense is recklessness. *N.J.S.A.* 2C:2–2b(3) states:

> A person acts recklessly with respect to a material element of an offense when [the actor] consciously disregards a substantial and unjustifiable risk that the material element exists or will result from [the actor's] conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to [the actor], its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation...

■ The State argues that "[i]t is obvious that the firing of a gun at another human being without checking to see if it is loaded

---

[3] A separate provision covers death by auto. *N.J.S.A.* 2C:11–5.

[4] Murders committed in the heat of passion, and causing the death of another while fleeing from law enforcement, are also characterized as manslaughter. *N.J.S.A.* 2C:11–4b.

disregards a substantial risk." The State argues that at a minimum there must be some proof establishing that defendant "reasonably arrived at the conclusion underlying the mistake." *N.J.S.A.* 2C:2–4a. To return to the language of *N.J.S.A.* 2C:2–4a, does the mistake about whether the gun was loaded "negative[ ] the culpable mental state required to establish the offense", or does "the law provide[ ] that the state of mind established by such ignorance or mistake constitutes a defense"? Of itself, a belief that the gun is loaded or unloaded does not negate the culpable mental state for the crime of manslaughter. Thus, one who discharges a gun, believing it to be unloaded, is not necessarily innocent of manslaughter. *See State v. Reed,* 211 *N.J.Super.* 177, 184, 511 *A.*2d 680 (App.Div.1986), *certif. denied,* 110 *N.J.* 508, 541 *A.*2d 1368 (1988) (holding trial judge did not err in charging aggravated manslaughter when defendant had aimed shotgun at victim and pulled trigger without checking whether gun was loaded); Charles E. Torcia, 2 *Wharton's Criminal Law* § 171 at 392 (15th ed. 1994) ("[M]anslaughter is committed where a defendant points a gun, which he believes unloaded, at another person, as a joke or merely to cause fright, and pulls the trigger causing the gun to be discharged, resulting in such other person's death.")

The State notes that under *N.J.S.A.* 2C:12–1b(4), a defendant is criminally liable for fourth-degree aggravated assault when the actor, "[k]nowingly under circumstances manifesting extreme indifference to the value of human life points a firearm ... at or in the direction of another, whether or not the actor believes it to be loaded." The State contends that a defendant should not be able to assert a mistake-of-fact defense when charged with manslaughter, if such a defense would not be available against a charge of aggravated assault. In the case of certain offenses, state of mind is simply not an essential or material element. *See N.J.S.A.* 2C:2–2c(3).

On the other hand, the Sixth Amendment allows a defendant to assert any fact that will negate a material element of a

crime.  *See State v. Budis,* 243 *N.J.Super.* 498, 513, 580 *A.*2d 283 (1990), *aff'd,* 125 *N.J.* 519, 593 *A.*2d 784 (1991) (holding that bar to admission of "crucial defense evidence ... violated defendant's Sixth Amendment rights").  The material elements of manslaughter are the killing of another human being with a reckless state of mind.  The culpable mental state is recklessness—the conscious disregard of a substantial and unjustified risk that death will result from the conduct.  What mistaken belief will negate this state of mind?

> [T]he translation is uncertain at its most critical point: in determining the kind of mistake that provides a defense when recklessness, the most common culpability level, as to a circumstance is required.  Recall that a negligent or faultless mistake negates ... recklessness.  While a "negligent mistake" may be said to be an "unreasonable mistake," all "unreasonable mistakes" are not "negligent mistakes."  A mistake may also be unreasonable because it is reckless.  Reckless mistakes, although unreasonable, will not negate recklessness.  Thus, when offense definitions require recklessness as to circumstance elements, as they commonly do, the reasonable-unreasonable mistake language inadequately describes the mistakes that will provide a defense because of the imprecision of the term "unreasonable mistake."  Reckless-negligent-faultless mistake language is necessary for a full and accurate description.
>
> [Robinson & Grall, *supra,* 35 *Stan. L.Rev.* at 729.]

Thus, to disprove a reasonable mistake by proving that it is unreasonable, will turn out to be a mixed blessing for defendant.  If the State may disprove a reasonable mistake by proving that the mistake was unreasonable, defendant may be convicted because he was negligent, as opposed to reckless, in forming the belief that the gun was unloaded.  If recklessness is required as an element of the offense, "a merely negligent or faultless mistake as to that circumstance provides a defense." *Id.* at 728.[5]

Correctly understood, there is no difference between a positive and negative statement on the issue—what is required for liability

---

[5] Wisconsin sidesteps the problem by concluding that the subjective state of mind of one who is charged with criminal negligence is simply irrelevant.  A bow hunter cannot claim that he mistakenly believed his companion was elsewhere when he shot him in the leg.  *State v. Lindvig,* 205 *Wis.*2d 100, 555 *N.W.*2d 197, 199 (Ct.App.1996).  But note that the culpable mental state is negligence.

versus what will provide a defense to liability. *Id.* at 732. What is required in order to establish liability for manslaughter is recklessness (as defined by the Code) about whether death will result from the conduct. A faultless or merely careless mistake may negate that reckless state of mind and provide a defense.

How can we explain these concepts to a jury? We believe that the better way to explain the concepts is to explain what is required for liability to be established. The charge should be tailored to the factual circumstances of the case. The court should explain precisely how the offered defense plays into the element of recklessness. *See State v. Concepcion*, 111 *N.J.* 373, 379–80, 545 *A.*2d 119 (1988) (explaining that trial courts should mold jury instructions "in a manner that explains the law to the jury in the context of the material facts of the case," and holding that "jury should have been told to measure *all* of defendant's relevant conduct against the legal standard for reckless manslaughter") (emphasis added). Something along the following lines will help to convey to the jury the concepts relevant to a reckless manslaughter charge:

> In this case, ladies and gentlemen of the jury, the defendant contends that he mistakenly believed that the gun was not loaded. If you find that the State has not proven beyond a reasonable doubt that the defendant was reckless in forming his belief that the gun was not loaded, defendant should be acquitted of the offense of manslaughter. On the other hand, if you find that the State has proven beyond a reasonable doubt that the defendant was reckless in forming the belief that the gun was not loaded, and consciously disregarded a substantial and unjustifiable risk that a killing would result from his conduct, then you should convict him of manslaughter.

Undoubtedly, our Committee on Model Criminal Charges can improve the formulation.

To sum up, evidence of an actor's mistaken belief relates to whether the State has failed to prove an essential element of the charged offense beyond a reasonable doubt. As a practical matter, lawyers and judges will undoubtedly continue to consider a mistake of fact as a defense. When we do so, we must carefully analyze the nature of the mistake in relationship to the culpable mental state required to establish liability for the offense charged.

Despite the complexities perceived by scholars, the limited number of appeals on this subject suggests to us that juries have very little difficulty in applying the concepts involved. We may assume that juries relate the instructions to the context of the charge. For example, in the case of the carelessly purloined umbrella, we are certain that juries would have no difficulty in understanding that it would have been a reasonable mistake (although perhaps a negligent mistake) for the customer to believe that he or she was picking up the right umbrella.

To require the State to disprove beyond a reasonable doubt defendant's reasonable mistake of fact introduces an unnecessary and perhaps unhelpful degree of complexity into the fairly straightforward inquiry of whether defendant "consciously disregard[ed] a substantial and unjustifiable risk" that death would result from his conduct and that the risk was "of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involve[d] a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." *N.J.S.A.* 2C:2–2b(3); *N.J.S.A.* 2C:11–4b.

The judgment of the Appellate Division is affirmed. The matter is remanded to the Law Division for further proceedings in accordance with this opinion.

*For affirmance and remandment*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.