788 A.2d 303 (2002)
STATE of New Jersey, Plaintiff-Respondent,
v.
Sonya JONES, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 26, 2001.
Decided January 10, 2002.
*305 Peter A. Garcia, Acting Public Defender, for appellant (Olivia Belfatto Crisp, Designated Counsel, of counsel and on the brief).
John J. Farmer, Jr., for respondent (Analisa Sama Holmes, Deputy Attorney General, of counsel and on the brief).
Before Judges HAVEY, COBURN, and WEISSBARD.
*304 The opinion of the court was delivered by WEISSBARD, J.A.D.
Defendant, Sonya Jones, appeals from her conviction after a trial by jury on a single count indictment charging interference with custody, in violation of N.J.S.A. 2C:13-4a(4). Defendant had been on probation for passing a bad check and her conviction on the interference charge resulted in a violation of the probation. On January 21, 2000, defendant was sentenced to a nine-year prison term on the jury trial conviction and a concurrent five-year term on the bad check charge. Finding error in the instructions to the jury, we reverse the interference conviction and remand for a new trial. As a result, we also vacate the concurrent sentence which was predicated upon the interference conviction under Indictment No. 97-01-0005.
Defendant and Roland Jones divorced in July 1995, after approximately eighteen years of marriage. At the time of the divorce, they had three children, Roland Jr., born May 25, 1979, Marissa, born September 27, 1980, and Cody, born October *306 10, 1984. Their daughter, Marissa, subsequently died in 1994 of a heart ailment.
Defendant and Jones entered into a property settlement and custody agreement. The agreement, drafted by defendant, provided for the division of their assets and the custody of their children. The consent judgment of divorce incorporated the agreement.
With respect to custody, the agreement provided, in pertinent part, as follows:
1. The Wife and Husband shall have joint custody of the minor children born of the marriage as follows:
a. Commencing with every Friday evening, the party having custody shall relinquish custody to the other party for the period of one (1) week.
b. The minor children will be available to both parties on holidays, as shall be worked out between the parties.
c. Either party may temporarily remove the children from the State of New Jersey for a reasonable period of time and only upon reasonable notice to the other party.
The agreement further provided that:
A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement. The failure of either party to insist on performance or any other provision of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.
Although the agreement was never modified in writing, it was substantially modified by conduct; for some unspecified period of time Roland Jr. lived exclusively with his father, and commencing on June 15, 1998 Cody lived with defendant, spending only four days with Jones during that entire summer.
On September 26, 1998, defendant purchased two one-way airline tickets to Lima, Peru and on September 28, 1998 Cody, who was just two weeks shy of his fourteenth birthday, left with defendant for Peru.[1] Defendant did not inform Jones about the trip. On October 1, 1998, Jones received a call from defendant's landlord, presumably inquiring of defendant's whereabouts, as a result of which he called Cody's school and learned that he had not been in attendance. Jones then called the police and reported his son missing. Jones also returned to court and obtained an order granting him sole custody of Cody effective October 16, 1998.
With the assistance of the Federal Bureau of Investigation (FBI), defendant and Cody were located in Bolivia in December 1998. Jones flew to Bolivia and returned to the United States with his son. Defendant was arrested by local authorities in Bolivia and returned to the United States where she was arrested and taken into custody.
On appeal, defendant raises the following issues:
POINT I. THE COURT DEPRIVED DEFENDANT OF A FAIR TRIAL IN REFUSING TO ALLOW DEFENDANT'S TEEN-AGE SON TO TESTIFY, THUS DEPRIVING HER OF HER RIGHT TO PRESENT A DEFENSE.
POINT II. THE COURT'S REFUSAL TO CONDUCT A HEARING PURSUANT TO N.J.R.E. 104(a) AND TO PERMIT CROSS-EXAMINATION OF THE STATE'S MAIN WITNESS REGARDING THE ORAL MODIFICATION *307 OF THE DIVORCE AGREEMENT ON CUSTODY ISSUES VIOLATED DEFENDANT'S RIGHT OF CONFRONTATION AND THE ABILITY TO PRESENT A DEFENSE.
POINT III. THE COURT, IN ITS CHARGE, CONFUSED THE JURY IN ITS INSTRUCTIONS THAT THE DEFENDANT "TOOK" HER SON FROM THE CUSTODY OF HIS FATHER WITHOUT DEFINING THIS TERM AND THEN IN REPEATING THIS CHARGE IN RESPONSE TO A QUESTION, THUS DEPRIVING DEFENDANT OF A FAIR TRIAL.
POINT IV. THE COURT'S RULINGS EXHIBITED A CLEAR BIAS IN FAVOR OF THE PROSECUTION, THUS DEPRIVING DEFENDANT OF A FAIR TRIAL.
POINT V. N.J.S.A. 2C:13-4 IS OVERBROAD IN THAT IN INFRINGES UPON THE CONSTITUTIONALLY PROTECTED RELATIONSHIP BETWEEN PARENT AND CHILD, IN VIOLATION OF THE FOURTEENTH AMENDMENT. (NOT RAISED BELOW)
POINT VI. THE SENTENCE WAS MANIFESTLY EXCESSIVE IN THAT DEFENDANT SHOULD HAVE RECEIVED THE MINIMUM PERIOD OF IMPRISONMENT FOR A SECOND DEGREE OFFENSE.
We find merit in Point III, although not for the precise reasons argued by defendant. We address that issue first and then comment briefly on other issues that may surface again in the event of a retrial.

I.
The statute in question provides, in pertinent part, as follows:[2]
a. Custody of children.
A person, including a parent, guardian or other lawful custodian, is guilty of interference with custody if he:

* * *
(4) After the issuance of a temporary or final order specifying custody, joint custody rights or parenting time, takes, detains, entices or conceals a minor child from the other parent in violation of the custody or parenting time order.
Interference with custody is a crime of the third degree but the presumption of non-imprisonment set forth in subsection e. of N.J.S. 2C:44-1 for a first offense of a crime of the third degree shall not apply. However, if the child is taken, detained, enticed or concealed outside the United States, interference with custody is a crime of the second degree.
The court charged the jury as follows with respect to the elements of this offense:
In order for you to find the defendant guilty of the crime of interference with custody, the State must prove beyond a reasonable doubt the following:
One, that there was a court order governing the custody of Cody Jones.
Two, that on September 28, 1998, Cody Jones was less than 18 years of age.
Three, that the defendant took Cody Jones from the custody of his parent, Roland Jones.
*308 Four, that the defendant took Cody Jones outside the United States.
Five, that the defendant's conduct was in violation of a judgment of this Court.
And, six, that the defendant acted knowingly.
It is charged, and you must find as an element of the offense in order to convict, that the defendant took Cody Jones from the custody of his parent, Roland Jones.
The State is not required to prove that Cody Jones was in the physical custody of his father at the time of the taking. If the removal of Cody Jones from the United States interfered with his father's parenting rights under the judgment of divorce which incorporated the property settlement agreement, then a taking as required by law has been established.
The court also charged the applicable mental state as being "knowingly."
Defense counsel objected to the final portion of the charge suggesting that the court should have simply "[stuck] to the statutory language." Noting that in summation defense counsel had argued that Jones' custody rights had to be interfered with and also noting the "ambiguity of the word `taking' [the court] concluded that the jury had to be instructed [as to] what taking meant." When pressed by the court as to whether the instruction was legally erroneous, defense counsel responded:
The question, I suppose, is what's a violation, Judge. And reasonable men will differ, I include myself in that category rather liberally. I consider myself reasonable. I think that under the circumstances of this family, where there was an oral modification of this provision which has not been allowed before the finder of the fact and where there was a history of doing it yourself legally, where there was a history of Roland, Junior living full-time with the father without any modification reduced to writing or brought to court, where there was a history of the son Cody Jones staying not just without objection from the father, but with agreement from the father who then treated Cody Jones as if the father was the wounded party and the party rejected him, as a passive aggressive display of his own hurt feelings, like a typical knuckle-headed guy.
In response to the court's further inquiry as to whether "there is anything legally wrong with the proposition that a taking does not have to be from the physical custody of one parent or the other," counsel could only state, "I think this is a statute which needs further fine tuning...."
Shortly after beginning deliberations, the court received the following note from the jury:
Dear Judge,
Could you define the law in reference to Item # 3 in Outline for Jurors,[3] "That *309 the Defendant took Cody Jones from the custody of his parent, Roland Jones." If Mrs. Jones had physical custody, how does this relate to custody?
In reply, the court sent a note back to the jury repeating, in essence, key language from the charge. The court replied as follows:
It is charged that the defendant took Cody Jones from the custody of his father, Roland Jones.
The State is not required to prove that Cody Jones was in the physical custody of his father at the time of the taking.
If the removal of Cody Jones from the United States interfered with his father's parenting under the Judgment of Divorce which incorporated the Property Settlement/Custody Agreement, then "taking" has been established.
The jury returned its verdict about twenty-five minutes later.
On appeal, defendant argues that the court erred in two respects in charging the jury. First, she contends that the word taking is not one that is self-explanatory and, as a result, the court should have guided the jury by providing a definition of that word. Second, defendant contends that the court, particularly in response to the jury's question which indicated some confusion on the issue of how taking related to custody, should have "tailored the charge to the facts of the case." The State responds, essentially, that the charge was adequate, particularly without the guidance of a Model Jury Charge, and that taking did not need to be defined for the jury.
As to the definition of "taking," we disagree with defendant's argument. In the context of this case we do not believe the jury needed any further definition of that term, which, we assume, would have come from a dictionary. Defendant "took" her son to South America in any accepted sense of the word. Indeed, we do not understand her to dispute that fact; it was essentially conceded in summation. This is not a case where the word was susceptible of varying interpretations or was technical in nature. Words "used by ordinary citizens in everyday conversation" need not be defined for the jury. State v. Afanador, 134 N.J. 162, 171, 175, 631 A.2d 946 (1993). There was no danger that the jury could have been misled without a definition of taking.
We also perceive no error in the court instructing the jury that there need not be a taking from physical custody but simply a taking that interfered with the father's parenting rights. Indeed, that is the language of the statute itself, which prohibits taking the child in violation of "the parenting time order." Thus, we suggest that the court did not, at least initially, set out the elements of the offense properly, at least in the context of this case, by stating as element three that "the defendant took Cody Jones from the custody of his parent, Roland Jones." The reference should have been to parenting time instead of custody; the same being true of the reference to custody in element one. However, the court's additional explanation clarified the matter and there was no prejudice to defendant.
Nevertheless, we do agree with defendant that the court erred in failing to relate the law to the facts, particularly with respect to whether the taking actually deprived Roland Jones of rights under the custody order or whether he had, by his conduct, waived those rights or, alternatively, whether he and defendant had, by their mutual conduct, modified the agreement. *310 The failure to do so, we conclude, constituted error.
The present case demonstrates once again that "[i]t is not always sufficient `simply to read the applicable provisions of the Criminal Code, define the terminology, and set forth the elements of the crime.'" State v. Martin, 119 N.J. 2, 18, 573 A.2d 1359 (1990) (quoting State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988)). There are times, and this case presents one, when "the court should mold its instructions to the factual hypotheses of the parties." Ibid. (citing State v. Concepcion, supra, 111 N.J. at 380, 545 A.2d 119). "The purpose of a trial court's instruction is to `explain the law to the jury in the context of the material facts of the case.'" State v. Martini, 131 N.J. 176, 271, 619 A.2d 1208 (1993) (quoting State v. Concepcion, supra, 111 N.J. at 379, 545 A.2d 119); see also State v. Sexton, 160 N.J. 93, 106, 733 A.2d 1125 (1999).
The court's failure in this case to tailor the charge to the facts likely resulted from the very narrow view the court took of the statutory requirements. Thus, when defense counsel sought to cross-examine Jones concerning his relationship with Cody, arguing that the parties to the agreement appeared to have "treated the situation as if the child was to stay with the mother," the court found the evidence irrelevant. The court opined that the matters that counsel sought to explore were "for naught in light of the property settlement agreement incorporated into the judgment of divorce. It is what it is. It's an order of the court." When counsel complained that the court's approach was "very close to strict liability," and precluded proof of "variations on the custody agreement which are conveniently gone along with," the court agreed that "in all fairness, the Court does view this as a strict ... rather strict liability type statute, there's no other way for the Court to read it."
The court rejected counsel's view,
that the interest of justice demand that more of the res gestae setting be developed for the purposes of the jury considering... in connection with their deliberations what the interests of justice are.
The court thereupon summed up its view as follows:
The issue here, as the Court sees it, is rather simple, was there ... was there an order of the Court? Was the order of the Court violated? Did the defendant violate that order knowingly? And the Court is not about to undertake a new custody hearing. It is not about to revisit the divorce proceedings. It is going to limit this trial to the issues that the Court has just defined: The existence of an order, the violation of the order, if any, and the defendant's state of mind, if any.
In order to explain to the jury why defense counsel's cross-examination appeared to be restricted, the court then told the jury,
Ladies and gentlemen, just so that you understand, the Court is not hiding things from you. The Court has made rulings in this matter. And the rulings essentially are these: That the Court here, for the purposes of this trial, is not concerned with the relationship or the divorce proceedings between Mr. and Mrs. Jones. That the focus of this case is simply this. Was there a court order in existence? Was the court order violated? Did the defendant violate that court order knowingly?
The Court is not going to reopen a dispute that was resolved years ago which this Court, at least, has determined, the judge has a matter of law, *311 that it is not relevant to this case. Might be interesting, but the Court has concluded that it is not relevant to the resolution of this matter.
So, that is why Mr. Hamilton, who represents Mrs. Jones, has been rather constricted in the questions that he can ask here.
Again, it's a legal ruling of the Court and if this Court is in error in its rulings, there are Appellate Courts that will review these proceedings and can correct the error if the Court is wrong. But that's the ruling that applies here in this courtroom for this trial.
We take a somewhat different view of the matter. One of the critical issues was whether defendant's admitted taking of Cody actually deprived his father of parenting time. In that regard, the precise terms of the settlement agreement, embodied in the judgment of divorce, were not dispositive. That agreement, and with it the court order effectuating it, could be modified by the conduct of the parties. See Schuler v. Cmty. First Nat. Bank, 999 P.2d 1303, 1305 n. 1 (Wyo.2000) ("[I]f the parties mutually adopt a mode of performing their contract differing from its strict terms or if they mutually relax the contract's terms by adopting a loose mode of executing them, neither party can go back upon the past and insist upon a breach because the contract was not fulfilled according to its letter." (citing Quin Blair Enters., Inc. v. Julien Constr. Co., 597 P.2d 945, 951 n. 6 (Wyo.1979))); 13 Williston on Contracts § 39:30 (4th ed. 2000). We see no reason why these contract principles are not applicable to this case where the alleged criminal conduct is based upon an agreement between the parties later embodied in a court judgment. Indeed, even if this were a criminal contempt proceeding for violation of the court order, the fact that the parties had modified the order by their conduct would be highly relevant. Cf. State v. Wilmouth, 302 N.J.Super. 20, 694 A.2d 584 (App.Div.1997) (Where domestic violence restraining order prohibited father of child from having any contact or communication with child's mother, there was no violation of order where father spoke with mother about future visitation when dropping off child since parties' prior conduct constituted "ad hoc modification of the order to [permit communication in order] to change the stipulated place of drop off and pick up.")
In this case, a jury could have found that a substantial modification of the agreement, and order, did take place; Cody's father had apparently given up his right to parenting time as set forth in the agreement. Since June 15, 1998, Cody had only been with his father once or twice, for a few days each, rather than every other week as provided in the agreement. Indeed, the father's contact between visits was apparently so sporadic that he only learned of Cody's disappearance when called by defendant's landlord. We may assume that if Cody had remained away for an extended period, as defendant planned, Jones would, at some point, have sought parenting time with Cody. Nevertheless, this was a criminal trial and the jury was entitled to hear the relevant facts and to understand how those facts fit into the legal framework of the charge; only then could the jury determine whether defendant had been shown to have violated the statute beyond a reasonable doubt.
The court's obligation to clarify the law for the jury was even more apparent when the jury requested reinstruction on this very issue, only to have the judge repeat "the abstract definition that left the jury uncertain in the first place." State v. Concepcion, supra, 111 N.J. at 381, 545 A.2d 119. Rather, the court's instruction, based on its view of the case as being close to *312 "strict liability," "reasonably could have had the effect of directing a guilty verdict." State v. Hackett, 166 N.J. 66, 85, 764 A.2d 421 (2001).
Although defense counsel did not articulate this position at trial as clearly as might be desired, we conclude that he sufficiently alerted the trial court to the issue so as to avoid any necessity of evaluating this claim as "plain error." In any event, even under that rigorous standard we find the error such as to have been clearly capable of producing an unjust result. R. 2:10-2; State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970).

II.
Because the case must be retried, we need only comment briefly on defendant's contentions that the court erred in barring certain proffered testimony by Cody and by restricting defendant's cross-examination of Jones.
With respect to Cody, defendant proffered that he would testify about the circumstances of the trip, that he had been actively involved in planning the trip, that the trip was meant to be educational and Cody had brought his school books with him, that the trip was planned to last a year, and that he did not have a good relationship with his father. The court ruled that the testimony would be irrelevant and unduly prejudicial, merely being an attempt to engender sympathy or generate confusion. See N.J.R.E. 403. Based upon the proffer, the court's ruling did not constitute an abuse of discretion. See State v. Morton, 155 N.J. 383, 453, 715 A.2d 228 (1998), cert. denied, 532 U.S. 931, 121 S.Ct. 1380, 149 L.Ed.2d 306 (2001); State v. Collier, 316 N.J.Super. 181, 193, 719 A.2d 1276 (App.Div.1998), aff'd, 162 N.J. 27, 738 A.2d 369 (1999). Virtually all of the suggested testimony was irrelevant; that is, it did not have a sufficient relationship to any material fact actually in issue in the case. See N.J.R.E. 401; see also N.J.R.E. 402; State v. Covell, 157 N.J. 554, 565, 725 A.2d 675 (1999); State v. Hutchins, 241 N.J.Super. 353, 359, 575 A.2d 35 (App.Div.1990). Clearly, Cody's testimony did not provide his mother with a defense under N.J.S.A. 2C:13-4c(3), nor did his strained relationship with his father rise to the level where it would pose an "imminent danger to his welfare" under N.J.S.A. 2C:13-4c(1).
Nevertheless, on retrial Cody may have relevant testimony concerning the manner in which the agreement between his parents was modified, particularly from the summer of 1998 until his departure in late September. If so, then such testimony would be admissible.
Similarly, for the reasons stated previously, cross-examination of Jones in this same area should be permitted. This does not mean, however, that defendant has free rein to inquire into every aspect of Jones' personal life. It is only evidence that would bear on the manner in which the agreement was modified that we sanction. The extent and manner of the examination remains under the control of the trial judge, N.J.R.E. 611(a), subject to defendant's overriding constitutional right to present a defense. State v. Dimitrov, 325 N.J.Super. 506, 510, 739 A.2d 1008 (App. Div.1999), certif. denied, 163 N.J. 79, 747 A.2d 287 (2000).

III.
Defendant contends that the trial judge exhibited bias in favor of the prosecution, thereby depriving her of a fair trial. We reject that argument. Although, as we have noted, the trial judge took a constricted view of the statute and thereby *313 fell into error, we detect no bias. The judge treated defense counsel with courtesy and gave him every opportunity to spread his objection on the record and to make proffers of excluded evidence. This contention is unfounded.

IV.
We reject defendant's claim that the statute is overbroad in that it infringes on the constitutionally protected relationship between parent and child. We begin with the strong presumption that a statute is constitutional. State v. Muhammad, 145 N.J. 23, 41, 678 A.2d 164 (1996). The party challenging the constitutionality of a statute bears the burden of establishing its unconstitutionality. State v. One 1990 Honda Accord, 154 N.J. 373, 377, 712 A.2d 1148 (1998), clarification denied, 156 N.J. 378, 718 A.2d 1207 (1998). It is presumed that the Legislature acted with existing constitutional law in mind and intended the statute to function in a constitutional manner. NYT Cable TV v. Homestead at Mansfield, Inc., 111 N.J. 21, 26, 543 A.2d 10 (1988).
The test for determining whether a statute is overly broad is whether the statute "reaches a substantial amount of constitutionally protected conduct." City of Houston v. Hill, 482 U.S. 451, 458, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398, 410 (1987); State v. Mortimer, 135 N.J. 517, 530, 641 A.2d 257 (1994), certif. denied, 513 U.S. 970, 115 S.Ct. 440, 130 L.Ed.2d 351 (1994); Binkowski v. State, 322 N.J.Super. 359, 375, 731 A.2d 64 (App. Div.1999). Indeed, the doctrine of overbreadth is usually restricted to limitations on First Amendment rights. State v. Rodriquez, 264 N.J.Super. 261, 273, 624 A.2d 605 (App.Div.1993), aff'd 135 N.J. 3, 637 A.2d 914 (1994).
Defendant contends that N.J.S.A. 2C:13-4 is overbroad because it constitutes excessive governmental intrusion into the family relationship, adding that the statute is flawed because it fails to distinguish between a parent who merely takes a child on a prolonged vacation, as in defendant's case, and a parent who permanently removes a child to another jurisdiction. For support, defendant cites H.L. v. Matheson, 450 U.S. 398, 410, 101 S.Ct. 1164, 1171, 67 L.Ed.2d 388, 399 (1981), which held that the parent-child relationship is constitutionally protected and that parents are responsible for the care, custody, and nurturing of their children.
Defendant's argument fails because the statute authorizes only limited governmental intrusion into the parent-child relationship in specific circumstanceswhen a parent takes a child, in this case outside the United States, in violation of a valid custody order. Because the statute identifies with specificity what aspect of the parent-child relationship is criminal, it cannot be said that the statute substantially infringes upon a parent's right to make decisions for his or her child. The statute further limits the criminalization of parental behavior by providing four affirmative defenses, and allowing a parent to escape conviction if the parent can show that (1) the child was in imminent danger; or (2) the parent reasonably believed consent had been given; or (3) the child had consented and was over the age of fourteen; or (4) the parent believed he or she was in imminent physical danger from the other parent. N.J.S.A. 2C:13-4(c), (d); see also Wilkins v. State, 985 P.2d 184, 185-86 (Okla.Crim.App.1999) (holding that child stealing statute was not overbroad because statute did not criminalize every activity with child by one parent but strictly prohibited malicious, forcible, or fraudulent taking of child with intent to detain and conceal from other parent), cert. denied, *314 528 U.S. 1086, 120 S.Ct. 813, 145 L.Ed.2d 685 (2000).
N.J.S.A. 2C:13-4 is not overbroad; it specifies a narrow range of parental acts that constitute the offense of interference of custody and therefore does not substantially interfere with a parent's right to rear his or her child.

V.
Defendant argues, finally, that her sentence was manifestly excessive. We need not address that issue at this time except to note the following: (1) the court could have sentenced defendant to an extended term as a persistent offender, N.J.S.A. 2C:43-7a(3), but did not do so; (2) the court did not "double count" by considering the length of time Cody was out of the country, see N.J.S.A. 2C:13-4f(2); (3) however, it does appear, as defendant argues, that one or more mitigating factors were present. The court will be free to evaluate the matter again if there is a subsequent conviction and sentencing.

VI.
Because defendant's sentence on the violation of probation was predicated upon her conviction for interference with custody, that conviction must be set aside as well.
Reversed and remanded for a new trial.
NOTES
[1] If Cody had been fourteen, his consent would have provided defendant with a complete defense to the charge. N.J.S.A. 2C:13-4c(3).
[2] N.J.S.A. 2C:13-4 was amended by L.1997, c. 299, § 7 to substitute references to "parenting time" for references to visitation. Subsequent amendments by L.1999, c. 190, § 2 are not applicable in this case because they were effective August 31,1999, after the date of the events which led to defendant's prosecution.
[3] The Outline For Jurors was a written statement of the elements of the offense, as follows:

INTERFERENCE WITH CUSTODYCOUNT 1
In order for you to find the defendant guilty of the crime of Interference with Custody, the State must prove beyond a reasonable doubt the following:
1. That there was a court order governing the custody of Cody Jones.
2. That on September 28, 1998, Cody Jones was less than 18 years of age.
3. That the defendant took Cody Jones from the custody of his parent, Roland Jones.
4. That the defendant took Cody Jones outside the United States.
5. That the defendant's conduct was in violation of a judgment of this court.
6. That the defendant acted knowingly.