**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3337-19

KHILIL BRYANT, a/k/a
KHILL BRYANT, and
DYMILL BRYANT,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

Submitted January 5, 2022 – Decided March 17, 2022

Before Judges Whipple and Susswein.

On appeal from the New Jersey Department of Corrections.

Khilil Bryant, appellant pro se.

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Donna Aarons, Assistant Attorney General, of counsel; Chanell Branch, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Khilil Bryant appeals from a final agency decision by the Department of Corrections (DOC) affirming his administrative conviction for two counts of assaulting any person, N.J.A.C. 10A:4-4.1(a)(1)(ii) (*.002), and one count of conduct that disrupts or interferes with the orderly running of a correctional facility, N.J.A.C. 10A:4-4.1(a)(2)(xix) (*.306). Bryant argues that the DOC's decision was arbitrary and capricious for failing to consider his medical condition—diabetes—as it could have explained his uncharacteristic, violent actions. After carefully reviewing the record, we remand for a new hearing at which the hearing officer shall make specific findings as to whether Bryant's assaultive conduct was a voluntary act considering his medical condition at the time of the incident.

I.

We discern the following facts and procedural history from the record. On March 4, 2020, Bryant's cellmate, Scott Audrique, notified Corrections Officer Mears that Bryant was banging his head against the cell doors. Officer Mears went to the cell to evaluate the situation and witnessed Bryant demonstrating "extremely odd behavior." The record indicates that Officer Mears had prior knowledge that Bryant is a diabetic. Upon witnessing Bryant's behavior, Mears initiated a "Code 53"—a procedure used when a medical

emergency arises. Sergeant Brown and multiple staff members responded to the call.

Officer Mears witnessed Bryant run out of his cell. When Sergeant Brown arrived at the scene, he witnessed Bryant "shouting obscenities." Brown ordered Bryant "to get down on the ground." Bryant refused and began running towards Officer Mears. Mears then "took [Bryant] to the ground." Bryant "became extremely combative" and placed his arms around Mears' head "in a head lock fashion." At this point, another officer on the scene, Officer Y. Brown,[1] initiated a Code 33—a procedure for when there is an emergency in the prison and an officer requires assistance.

Sergeant Brown struck Bryant twice in the shoulders with a baton. In addition, while attempting to handcuff Bryant, two officers "delivered a burst of [oleoresin] OC Spray to [] Bryant." The officers handcuffed Bryant and carried him down the stairs. The record reflects that while Bryant was being carried, he "again became combative and delivered a front kick to the stomach" of one of the officers. That prompted officers to take Bryant "back down to the ground."

---

[1] In the interest of clarity, the record shows that Officer Y. Brown and Sergeant Brown are two different people.

A-3337-19

Once on the ground, Bryant became compliant and medical staff placed him on a stretcher.

Bryant was charged with two counts of assaulting any person, *.002, and one count of conduct which disrupts or interferes with the orderly running of a correctional facility, *.306. The hearing was initially scheduled for March 6, 2020, but was postponed for medical reasons. The hearing was convened on March 13, 2020, at which Bryant pled not guilty. A memorandum was submitted into evidence from Jeffrey Pomerantz, DO,[2] the Site Medical Director, explaining that "it is possible for a . . . diabetic to have a sudden drop in blood sugar despite compliance with [a] medical regimen. The patient has not evinced noncompliance with [his] medical regimen . . . . [I]t is possible to have no warning symptoms of [hypoglycemia] with a brittle diabetic."

The hearing officer found Bryant guilty on all charges. The hearing officer determined that although Bryant had no prior history of institutional violence, on this occasion, he assaulted two officers. The hearing officer acknowledged that Bryant suffers from a medical condition—diabetes—but determined that Bryant "must be aware of his medical condition and the consequences" that may be associated with that condition. The hearing officer

---

[2] "DO" refers to Doctor of Osteopathic Medicine.

thus rejected Bryant's contention that he had no recollection of the incident because of low blood sugar.

Bryant was sanctioned to 365 days of administrative segregation, 120 days' loss of commutation time, and 15 days' loss of recreation privileges. Bryant administratively appealed the decision. The DOC determined that Bryant's "behavior was disruptive in nature and will not be tolerated. The sanction imposed was proportionate to the offense. No leniency will be afforded to you."

This appeal followed. Bryant raises the following contentions for our consideration:

> POINT I
>
> GUILTY FINDING ARBITRARY AND CAPRICIOUS WHEREIN APPELLANT'S HYPOGLYCEMIA CLAIM WAS IGNORED.
>
> POINT II
>
> HEARING OFFICER DECISION IN EXPLAINING HER FINDINGS DOES NOT SUFFICE FOR THE RECORD.

II.

We begin our analysis by acknowledging the legal principles governing this appeal. Our Supreme Court has held that inmates are afforded due process

A-3337-19

rights in disciplinary proceedings. Avant v. Clifford, 67 N.J. 496, 525–33 (1975); see also McDonald v. Pinchak, 139 N.J. 188, 193–94 (1995); Jacobs v. Stephens, 139 N.J. 212, 215 (1995). In Malacow v. N.J. Dep't of Corr., we summarized an inmate's due process rights:

> [a]n inmate facing disciplinary action must be provided with the following limited protections: (1) written notice of the charges, provided at least twenty-four hours before the hearing, so the inmate can prepare a defense; (2) an impartial tribunal, consisting of either one [hearing officer] or a three-member adjustment committee; (3) the assistance of a counsel substitute if the inmate is illiterate or unable to collect or present evidence; (4) the right to call witnesses and present documentary evidence, provided it is not "unduly hazardous to institutional safety or correctional goals"; (5) the right to confront and cross-examine adverse witnesses; and (6), quoting the Standards on the Inmate Discipline Program section 254.283, "a written statement of the fact-findings is given to the inmate by the [hearing officer] or by the adjustment committee chairman as to the evidence relied upon, decision and the reason for the disciplinary action taken unless such disclosure would jeopardize institutional security."
>
> [457 N.J. Super. 87, 93–94 (App. Div. 2018) (quoting Avant, 67 N.J. at 525–33).]

As the Supreme Court noted in McDonald, the regulatory framework for adjudicating charges "strike[s] the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due process rights of the inmates." 139 N.J. at 202.

6

The scope of our review is narrow. As a general matter, we will disturb an agency's adjudicatory decision only upon a finding that the decision is "arbitrary, capricious or unreasonable," or is unsupported "by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579–80 (1980) (citing Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963)). In determining whether an agency action is arbitrary, capricious, or unreasonable, a reviewing court must examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Carter, 191 N.J. 474, 482–83 (2007) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

Our deference to the adjudicatory decisions made by the DOC is especially appropriate in view of that agency's important mission to safeguard prison safety and security, which includes the protection of corrections officers. See Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238–39 (App. Div. 2019) (cautioning that a reviewing court should "not substitute its own judgment for the agency's . . . ."). In Blanchard, we emphasized that "prisons are

dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Id. at 238 (quoting Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999)). We accept that DOC must use all reasonable means to sanction and deter violence.

Furthermore, we are deferential to an agency's expertise. See Murray v. State Health Benefits Comm'n, 337 N.J. Super. 435, 442 (App. Div. 2001) (quotation marks omitted) (quoting In re Vineland Chem. Co., 243 N.J. Super. 285, 307 (App. Div. 1990)) ("[W]here there is substantial evidence in the record to support more than one regulatory conclusion, it is the agency's choice which governs."). We add, however, that while the DOC has unquestioned expertise in maintaining security within an institution, it does not necessarily have comparable expertise with respect to medical issues, especially when, as in this case, the agency does not rely upon medical evidence in the form of an expert opinion.

As a general matter, in an appeal from a final decision in a prisoner disciplinary matter, we consider whether there is substantial evidence in the record to support the Department's decision that the inmate committed the prohibited act. Blanchard, 461 N.J. Super. at 237–38 (citing Henry, 81 N.J. at

579–80 (1980)). "Substantial evidence has been defined alternately as 'such evidence as a reasonable mind might accept as adequate to support a conclusion,' and 'evidence furnishing a reasonable basis for the agency's action.'" Id. at 238 (quoting Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192, (App. Div. 2010)); see also N.J.A.C. 10A:4-9.15(a) ("A finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act."). We note, however, that "our review is not 'perfunctory,' nor is 'our function . . . merely to rubberstamp an agency's decision.'" Ibid. (quoting Figueroa, 414 N.J. Super. at 191). Rather, "[w]e are constrained to engage in a 'careful and principled consideration of the agency record and findings.'" Ibid. (quoting Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000)).

In a criminal prosecution, the State bears the burden of proving the defendant committed a "voluntary" act. N.J.S.A. 2C:2-1(a) provides:

> A person is not guilty of an offense unless his [or her] liability is based on conduct which includes a voluntary act or the omission to perform an act of which he [or she] is capable. A bodily movement that is not a product of the effort or determination of the actor, either conscious or habitual, is not a voluntary act within the meaning of this section.

Proof of a voluntary act is one of the minimum conditions for imposing criminal liability. See State v. Penna, 178 N.J. 297, 304 (2004) (citing State v.

Sexton, 160 N.J. 93, 98 (1999); N.J.S.A. 2C:2-1, -2). The drafters of the New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1 to 104-9 (penal code), recognized that the requirement of a voluntary act "is reflective of the fact that the law cannot hope to deter involuntary movement." N.J.S.A. 2C:2-1(a) cmt. 1 (1971). The penal code commentators further explained that N.J.S.A. 2C:2-1(a) "should be interpreted to exclude from the definition [of voluntary act] reflex actions, convulsions . . . [and] states of physical activity where self-awareness is grossly impaired or even absent, such as epileptic fugues . . . ." N.J.S.A. 2C:2-1(a) cmt. 3 (1971).

We believe the "bedrock" requirement to prove a voluntary act, see Penna, 178 N.J. at 304, applies not only to criminal prosecutions but also to administrative prosecutions for inmate disciplinary infractions. The regulations governing the conduct of inmates cannot hope to deter or otherwise prevent involuntary movements resulting from a medical crisis when, as in this case, the inmate appears to be dutifully complying with his prescribed medical regimen.

## III.

We need spend little time addressing Bryant's argument that that the DOC failed to present substantial evidence of his assaultive conduct. See N.J.A.C. 10A:4-9.15(a) ("A finding of guilt at a disciplinary hearing shall be based upon

10

substantial evidence that the inmate has committed a prohibited act."). That portion of Bryant's argument lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(1)(D). The record shows that Bryant became "extremely combative" and placed Officer Mears in a headlock. Further, the record shows that while Bryant was being carried down the stairs, he "again became combative and delivered a front kick to the stomach" of an officer. Defendant's conduct, without question, constitutes an assault and disrupted or interfered with the security or orderly running of the correctional facility.

The critical fact-sensitive issue raised in this case, however, is not whether Bryant physically resisted and assaulted corrections officers, but rather whether his violent outburst was a volitional act. Bryant argues that the "[g]uilty finding [was] arbitrary and capricious wherein appellant's hypoglycemia claim was ignored." Although we do not agree that Bryant's hypoglycemia claim was "ignored," we do agree that the hearing officer paid insufficient attention to whether Bryant's uncharacteristic violent outburst was the result of an acute hypoglycemic event. The hearing officer's decision discounted the medical evidence, reasoning that Bryant should have been aware of his medical condition and the consequences that may be associated with that condition.

The hearing officer's finding that Bryant was aware of his diabetes misses the point. We are not dealing with a situation where, for example, a person with a potentially debilitating medical condition ignores medical advice and chooses to operate a vehicle or heavy machinery. In that example, the individual is disregarding the risk of a seizure or other crippling medical event. Conversely, an inmate has no choice in deciding when to interact with corrections officers or other inmates. A diabetic inmate may be aware of the disease and yet be unable to prevent a hypoglycemic episode.

Nor does the record suggest that Bryant was noncompliant with his medical regimen to address his diabetes. On the contrary, the record shows sufficient evidence that he was complying with his prescribed medical regimen. The record also shows evidence that a sudden drop in blood sugar, hypoglycemia, might occur without warning. In these circumstances, we are not convinced the hearing officer made adequate findings to discount the possibility that defendant's aberrant behavior was the result of a medical emergency rather than a voluntary act amenable to deterrence by the threat of discipline.

We recognize that Pomerantz's report did not expressly opine that Bryant experienced hypoglycemia at the time of the incident, much less that a sudden drop in blood sugar level caused Bryant's bizarre and ultimately combative

12

behavior. We nonetheless conclude that Pomerantz's report raised the issue whether Bryant's uncharacteristic behavior—which led to a code 53 medical emergency—and the ensuing violent, profanity-laced outburst was volitional. We note the medical evidence Bryant submitted at the hearing was not listed under the "Summary of evidence relied on to reach [a] decision." As we have noted, although we generally defer to the DOC in matters of prison safety and security, see Blanchard, 461 N.J. at 238–39, DOC bears responsibility to provide proper reasons for imposing sanctions, see Malacow, 457 N.J. Super. at 94 (noting that even if an inmate's due process rights are not violated, remand may be warranted if the hearing officer fails to provide adequate reasons for sanctions).

Because the hearing officer in this instance failed to provide a suitable explanation for why the medical evidence did not support Bryant's claim, we conclude the decision as it stands is arbitrary and capricious. We therefore remand the matter for a new hearing at which the hearing officer shall make findings concerning the medical evidence and whether defendant's assaultive conduct was a voluntary act or instead a result of an acute medical condition over which Bryant had no warning or control. If the DOC chooses to present additional medical evidence, it shall provide adequate notice to Bryant before

13

the re-hearing.  We offer no opinion on whether Bryant committed a voluntary act when he resisted and assaulted the corrections officers.

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION